In the Matter of LESLIE J. LOUKOPOULOS et al., Respondents, v KATHRYNE J. LOUKOPOULOS, Appellant. [892 NYS2d 238]—

Kavanagh, J.

Respondent (hereinafter the mother) has twins, a son—who is the subject of this proceeding—and daughter (born in 1995).[1] In 1999, when the children were almost four years old, the mother moved from Chicago, Illinois to the City of Elmira, Chemung County so that petitioners—the mother's brother and his wife—could help her care for her children. The mother was diagnosed with bipolar disorder, which caused her to be hospitalized for significant periods of time during which petitioners cared for her children. Some five years later, the mother moved back to Chicago with her children. In August 2006, she was arrested for possession of illegal drugs and, during her resulting incarceration and subsequent hospitalization, the children were returned to petitioners in Elmira and, upon the mother's consent, Family Court issued an order granting them temporary custody.

In the fall of 2006, the mother moved back to Elmira and the parties entered into a stipulation that was subsequently incorporated into a Family Court order that placed custody of the children with the mother, but awarded visitation to petitioners. Initially, the mother resided with her children in petitioners' home until January 2007, when she secured her own residence where she remained with the children until they completed the school year. Before the 2007-2008 school year

---

1. The mother also has an adult daughter (born in 1986).

began, the mother moved to Chicago, but agreed that the son could stay with petitioners in Elmira, attend school and then return to live with her the following summer. In mid-November 2007, the mother traveled from Chicago to visit with the son, when she announced that she was taking him to live with her in Chicago. This prompted petitioners, on November 15, 2007, to bring, by order to show cause, this petition seeking custody of the child, including a request for temporary custody. Family Court denied the application for temporary custody, but directed that the son not be removed from his school or relocated from the county.[2] Four days later, the mother showed up at the local police department with the son explaining that she was homeless and had no place to go. The son's Law Guardian was contacted and, as a result, filed an application to award temporary custody of the son to petitioners. Family Court, without a hearing, granted petitioners temporary custody of the son and, after conducting fact-finding and *Lincoln* hearings, granted petitioners' application for custody. The mother now appeals.

Initially, Family Court's order granting temporary custody of the son to petitioners was superceded by the final custody order. Therefore, the mother's challenge to the temporary order is moot (*see Posporelis v Posporelis*, 41 AD3d 986, 988 [2007]; *Matter of Pecore v Pecore*, 34 AD3d 1100, 1102 [2006]).

As for Family Court's decision awarding petitioners custody, it is well settled that a biological parent has a superior right to custody over the rights of a nonparent and "[t]he [s]tate may not deprive a parent of the custody of a child absent surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances" (*Matter of Bennett v Jeffreys*, 40 NY2d 543, 544 [1976]; *see Matter of Mercado v Mercado*, 64 AD3d 951, 952 [2009]; *Matter of Bennor v Hewson*, 47 AD3d 1136, 1137 [2008], *lv denied* 10 NY3d 710 [2008]; *Matter of Marx v Tucker*, 36 AD3d 1125, 1126 [2007]). The burden of proving the existence of extraordinary circumstances rests with the nonparent (*see Matter of Linda D. v Renee D.*, 40 AD3d 1201, 1202 [2007]; *Matter of Foster v Foster*, 34 AD3d 1102, 1103 [2006]), and is not established simply because the biological parent has previously consented to the entry of an order granting custody to the nonparent (*see Matter of Moore v St. Onge*, 307 AD2d 421, 422 [2003]). In addition, only after Family Court is satisfied that extraordinary circumstances do indeed

2. The mother filed a cross petition alleging that petitioners violated the prior custody order, which was dismissed after she defaulted in that proceeding.

exist may it conduct a best interests analysis regarding the child's custodial arrangements (*see Matter of VanDee v Bean*, 66 AD3d 1253 [2009]; *Matter of Leighton v Bazan*, 36 AD3d 1178, 1179 [2007]).

Family Court's conclusion that extraordinary circumstances did exist, which justified removing the son from the mother's custody, enjoys ample support in the record. The mother, by all accounts, continues to struggle with her mental illness and, as a result, has often been unable to provide proper care for her child. She does not consistently take her prescribed medications, with the result that she is often vulnerable to episodes involving manic outbreaks and depression. Her conduct is often bizarre and erratic and has resulted in numerous hospitalizations, which required the child to be placed with petitioners.[3] When not hospitalized, the mother, despite her best efforts, has not been able to consistently provide a suitable living environment for the son and her home was described as being in an unsanitary condition. In addition, his educational needs have not been met while in the mother's care, especially during a period of time when she attempted to educate him at home as opposed to having him attend a traditional school. These conditions, and the impact that they have had on the child, constitute extraordinary circumstances that justified Family Court's inquiry into whether the son's best interests would be served by awarding custody to petitioners (*see Matter of Coonradt v Aussicker*, 66 AD3d 1143, 1144 [2009]).

Family Court, in concluding that the son's interests would best be served by awarding custody to petitioners, took into account all of the relevant factors needed to be considered in such an analysis (*see Matter of Bennett v Jeffreys*, 40 NY2d at 544; *Matter of Cumber v O'Leary*, 56 AD3d 1067, 1070 [2008]; *Matter of Ronald I. v James J.*, 53 AD3d 706, 708 [2008]; *Matter of Bohigian v Johnson*, 48 AD3d 904, 906 [2008]). It inquired into the need to provide a stable environment for the child, his wishes, the home environment provided by the mother and petitioners, their respective histories with the child, their ability to provide for his well-being and their willingness to foster a positive relationship between the child and the other party (*see Matter of Ronald I. v James J.*, 53 AD3d at 708). While residing with petitioners will necessarily involve a period of separation from the child's biological sister, the fact is that he has thrived while in their care and has developed a strong familial bond with their children. Petitioners have attended to all of the son's

---

**3.** In one instance, the mother was hospitalized after pouring kerosene over large areas inside her home.

medical and educational needs, and his teachers have noted a marked improvement in his behavior, attitude and physical appearance since he has been in petitioners' care. The stark contrast in the environment that existed in petitioners' home, as opposed to that which existed when the son resided with the mother, provides sufficient justification for Family Court's final conclusion that his best interests would be served by being placed in petitioners' custody.

The mother's remaining claims have been considered and found to be without merit

Cardona, P.J., Lahtinen, McCarthy and Garry, JJ., concur. Ordered that the order is affirmed, without costs.