■ In the Matter of MELODY J. et al., Respondents, v CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent, and MELISSA I., Appellant, et al., Respondent. [899 NYS2d 419]—

Peters, J.P. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered November 19, 2008, as amended by an order entered November 28, 2008, which granted petitioners' application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject child.

Respondents Melissa I. (hereinafter the mother) and Daniel C. are the parents of Ethan C. (born in 2004), who is the subject of this proceeding. The mother also has a daughter (born in 2008) who was born during the pendency of this proceeding out of her current relationship with her boyfriend. The mother, who is mildly mentally retarded, suffered a series of small strokes shortly after Ethan's birth which led to her hospitalization, during which time Ethan was cared for by family members. Thereafter, the mother and Ethan had various living arrangements, including residing with the mother's boyfriend at an apartment and later a camp-like facility, staying with her cousin, moving in with one of her sisters and living at temporary housing in local motels. During the time that the mother was residing with her sister, the sister filed for custody, and a court-ordered investigation was commenced by Susan Dewey, a Child Protective Services caseworker, into the complaints and cross-complaints filed by the mother and her sister.

On May 25, 2007, Child Protective Services received a report that the mother was observed intoxicated, while Ethan was present, at the hotel in which she was staying. Dewey responded to the call and, following the incident, Ethan was removed from the mother's care and placed in the temporary custody of petitioners, his maternal aunt and uncle. Thereafter, respondent Clinton County Department of Social Services commenced a neglect proceeding against the mother, the mother consented to a finding of neglect and Ethan continued in the custody of petitioners.

In January 2008, after a permanency hearing, Family Court established a permanency plan with a goal of permanent placement with petitioners and ordered that, if petitioners failed to file a custody petition by February 2008, the Department should file an application pursuant to Family Ct Act § 1017 for an order of custody in favor of petitioners. Petitioners ultimately commenced this proceeding for permanent custody of Ethan and a fact-finding hearing was held. In a lengthy and detailed decision and order, Family Court concluded that extraordinary circumstances existed and that it was in the best interests of Ethan to award custody to petitioners, subject to weekly visitation with the mother. The mother appeals and we affirm.

Initially, the mother asserts that Family Court improperly determined the permanency plan goal to be placement with petitioners and improperly ordered petitioners to file a custody petition. However, inasmuch as the mother failed to appeal from the permanency hearing order which set forth these directives (*see* Family Ct Act § 1113), her arguments in that regard are not properly before us.

Turning to Family Court's decision awarding petitioners custody, it is fundamental that a biological parent has a right to custody of his or her child superior to that of a nonparent in the absence of "surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances" (*Matter of Bennett v Jeffreys*, 40 NY2d 543, 544 [1976]; *see Matter of Loukopoulos v Loukopoulos*, 68 AD3d 1470, 1471 [2009]; *Matter of Cumber v O'Leary*, 56 AD3d 1067, 1069 [2008]). The burden of proving such extraordinary circumstances rests with the nonparent seeking custody (*see Matter of Mercado v Mercado*, 64 AD3d 951, 952 [2009]) and, if established, the controlling consideration in determining custody is the best interests of the child (*see Matter of Bennett v Jeffreys*, 40 NY2d at 548; *Matter of Magana v Santos*, 70 AD3d 1208, 1209 [2010]; *Matter of Vann v Herson*, 2 AD3d 910, 912 [2003]). As Family Court is in the best position to evaluate the testimony, character, sincerity and ultimate credibility of the witnesses, its factual findings are accorded great deference and will not be disturbed unless they lack a sound and substantial basis in the record (*see Matter of Carton v Grimm*, 51 AD3d 1111, 1112 [2008], *lv denied* 10 NY3d 716 [2008]; *Matter of McDevitt v Stimpson*, 1 AD3d 811, 812 [2003], *lv denied* 1 NY3d 509 [2004]; *see also Matter of Fishburne v Teelucksingh*, 34 AD3d 804, 805 [2006]).

Here, the record supports Family Court's conclusion that extraordinary circumstances exist in that the mother is unfit to provide full-time care for Ethan, who has been diagnosed with

developmental delays and behavioral disorders. Prior to Ethan's removal from her custody, the mother admittedly used marihuana several times a week, was unable to maintain a stable residence for any significant period of time and used inappropriate caregivers. Further, even before his removal, the mother had never been a full-time parent to Ethan, having surrendered him to the care of her sisters for at least three to four days each week. The evidence further revealed that the mother has an IQ of 62 and suffers from several psychiatric diagnoses, including attention deficit hyperactivity disorder and posttraumatic stress disorder, which contribute to her poor parental judgment and inability to focus her attention to adequately and safely supervise her children. To that end, Dewey testified that she received reports of the mother's ongoing lack of supervision of Ethan prior to his removal. Moreover, visitations between the mother and Ethan, which were originally held for six hours at petitioners' home, were subsequently split into two three-hour periods because the mother felt that six hours was "too long," was unable to focus her attention on Ethan during the entirety of the visits and often terminated the visits early. Various witnesses, including petitioner Melody J., detailed numerous instances demonstrating the mother's difficulty in keeping Ethan and his sister safe and her lack of follow through with basic parenting skills.

Testimony revealed that, although the mother has taken significant steps to address her limitations and cognitive difficulties, including the completion of parenting classes, she is a very concrete thinker with a limited fund of general information. Consequently, her ability to abstract and react spontaneously to new situations is severely impaired and raises serious concerns regarding her ability to care for and address the particular needs of Ethan, who was described as a "stormy toddler" who is more difficult to control than the average child his age, needs consistency and stability, has been observed to injure himself and suffers from early signs of attention deficit hyperactivity and sleeping disorders.

Anissa Noto, a mental health evaluator who observed the mother and her children on a number of occasions and performed a parenting assessment, found that the mother experiences significant stress in parenting her children, is very easily distracted and has difficulty in getting Ethan to follow directions. She noted that Ethan is a difficult child who needs constant supervision and consistency and that, although the mother did not demonstrate any significant difficulty in caring for her newborn daughter, who remained in her custody, the

prognosis to successfully parent both children at the same time was poor. Noto concluded that the mother's lack of focus, poor judgment, cognitive limitations and mental disorders rendered her unable to safely parent Ethan. Giving due deference to Family Court's factual findings and credibility determinations, we find ample support in the record for its determination that the cumulative effect of the mother's cognitive limitations, mental illness and flawed parental judgment—and the impact they have on the child—constitute extraordinary circumstances (*see Matter of Loukopoulos v Loukopoulos*, 68 AD3d at 1472; *Matter of Gambino v Vargas*, 209 AD2d 893, 893-894 [1994]; *see also Matter of Tompkins v Sterling*, 267 AD2d 315, 315 [1999]; *compare Matter of Cole v Goodrich*, 272 AD2d 792, 793 [2000], *lv denied* 95 NY2d 874 [2000]).

We reach a similar conclusion with regard to Family Court's best interest determination (*see Matter of Bennett v Jeffreys*, 40 NY2d at 544). Based upon the totality of the circumstances, including the evidence relating to the past performance of petitioners and the mother, their respective abilities to provide for Ethan's emotional, physical and educational well-being, petitioners' willingness to foster a relationship between Ethan and his mother, and the need to maintain stability in the young child's life, we find no basis to disturb Family Court's decision to continue custody of Ethan with petitioners (*see Matter of Loukopoulos v Loukopoulos*, 68 AD3d at 1472-1473; *Matter of Scala v Parker*, 304 AD2d 858, 860 [2003]). The mother's remaining contentions, to the extent not specifically addressed herein, have been reviewed and found lacking in merit.

Spain, Lahtinen, Stein and Garry, JJ., concur. Ordered that the order is affirmed, without costs.