(August 18, 2011)

■ In the Matter of ERIC PETTAWAY, Appellant, v ERIC SAVAGE, Respondent. (Proceeding No. 1.) In the Matter of WILLIAM SAVAGE II, Respondent, v ERIC PETTAWAY, Appellant. (Proceeding No. 2.) [928 NYS2d 869]—

Garry, J.

Eric Pettaway is the father of a daughter (born in 1997). In 2003, he and the child's mother, Denise Knight, now deceased, stipulated to joint legal custody of the child with primary physical custody to the mother and visitation to the father. The child

resided with the mother and the child's two half siblings until the mother's death in June 2009, at which time the father commenced proceeding No. 1, seeking custody. In response, the attorney for the child moved by order to show cause for an award of sole legal and physical custody to William Savage II, also known as Eric Savage. Savage is not a biological relative of the child; he is the father of the child's older half sister and has fostered a close relationship with the child over the course of several years.* Savage then commenced proceeding No. 2, also seeking custody of the child.

Following an initial appearance in July 2009, Family Court awarded temporary sole custody to the father with visitation to Savage and the child's family at the father's discretion. Two weeks later, following an in camera hearing with the child, Family Court rescinded its interim order and awarded temporary sole custody to Savage with visitation to the father at the child's discretion. Fact-finding and *Lincoln* hearings were conducted in December 2009, at the conclusion of which Family Court found the existence of extraordinary circumstances sufficient to permit the court to intervene in the father's relationship with the child and then, further, that the child's best interests would be served by an award of sole custody to Savage. The father, who was granted visitation on alternate weekends and such additional periods of time as the parties and the child may agree, now appeals.

We affirm. "The [s]tate may not deprive a parent of the custody of a child absent surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances" (*Matter of Bennett v Jeffreys*, 40 NY2d 543, 544 [1976]; *accord Matter of Loukopoulos v Loukopoulos*, 68 AD3d 1470, 1471 [2009]). We note that extraordinary circumstances may not be established "merely by showing that the child has bonded psychologically with the nonparent" (*Matter of Esposito v Shannon*, 32 AD3d 471, 473 [2006]). The extraordinary circumstances analysis must consider "the cumulative effect" of all issues present in a given case and not view each factor in isolation (*Matter of Melody J. v Clinton County Dept. of Social Servs.*, 72 AD3d 1359, 1362 [2010], *lv denied* 15 NY3d 703 [2010]; *see Matter of Cumber v O'Leary*, 56 AD3d 1067, 1070 [2008]). In prior cases, extraordinary circumstances have been established based upon

---

* The issue of standing was not addressed in Family Court or upon appeal and was thus waived (*see Matter of Renee XX. v John ZZ.*, 51 AD3d 1090, 1092 [2008]); common-law standing was conferred in light of the determination (*see Matter of Ratliff v Glanda*, 263 AD2d 816, 817 [1999]; *Matter of Luther v Rate*, 226 AD2d 803, 804 [1996]).

the combined effect of factors, including the child's psychological bonding and attachments, the prior disruption of the parent's custody, separation from siblings and potential harm to the child, as well as the parent's neglect or abdication of responsibilities and the child's poor relationship with the parent (*see Matter of Banks v Banks*, 285 AD2d 686, 687 [2001]).

In *Matter of Banks v Banks* (*supra*), a case in which there are a number of significant similarities to the one now presented, the children—at the time of their father's death—had already developed a bond with his second wife after living with the couple for approximately 30 months (*id.* at 686). This Court reversed Family Court's award of custody to the biological mother, citing as extraordinary circumstances the death of the father, the "poor relationship" between the children and the mother, bereavement needs and other special issues affecting one of the children and the mother's recent "withdrawal as a parent" (*id.* at 688). Each and all of those factors are present here; as in *Banks*, one of the child's parents is deceased, the child has formed a strong psychological bond with a nonparent, the child has special needs in addition to psychological needs resulting from bereavement, and the parent seeking custody withdrew almost completely from the parental role for an extended period before the other parent's death.

Here, Family Court found that, prior to the mother's death, the father failed to play any significant role in the child's life, visited inconsistently throughout the child's life, and failed to attend to the child's emotional needs. The court further credited a psychologist's testimony and opinion that the father had emotionally abandoned the child by his neglect of her and had demonstrated a fundamental lack of understanding of her needs. These findings are fully supported by the record.

Family Court's conclusion that the father abdicated his parental responsibilities is supported by the testimony of several witnesses that the father frequently missed scheduled visits with the child and often left the child with other adults even when he did pick her up for visits, and by undisputed testimony that the father did not attend the child's school conferences or special education meetings until after the mother's death, did not know her teachers' names and never helped her with homework, although he testified that he knew she needed special assistance. Even while this matter was pending, the father failed to appear for a scheduled meeting with the child's teacher and guidance counselor, for reasons unexplained. Testimony further revealed that the father had failed to provide for the child's basic needs during her time with him—he had

not provided her with enough food during past visits, nor did he supply her with essentials such as soap or deodorant. When the child sustained an injury while performing physical work for the father's brother, neither the father nor his brother furnished appropriate medical care. There was further disturbing testimony—which Family Court found to be credible—that the father knew that his brother had "badgered" the child about her desire to live with Savage, and that the brother had threatened the child that his conduct should not be mentioned in court; despite this knowledge, the father did not intervene or seek to protect the child.

Family Court also found that the period in which the father had custody of the child after the mother's death "did not go well," noting that during this vulnerable period, the child felt isolated from her other family contacts and had limited interaction with them—at a time when any responsible parent or caretaker should have readily recognized that such support was essential. The court had ample basis for doubting the father's testimony that he would not relocate with the child to New Jersey, where his new wife resides and owns a growing travel business, finding it instead "extremely unlikely" that the father would foster the close relationship between the child and her sister and "the others [who] have become her true family." The court further found that the father lacked credibility regarding his previous conviction for attempted rape in the third degree of a person under 17, and his failure to complete sex offender treatment thereafter.

According deference to Family Court's credibility determinations and factual findings, there is a sound and substantial basis in the record supporting the determination of "extraordinary circumstance[s] which would drastically affect the welfare of the child" (*Matter of Bennett v Jeffreys*, 40 NY2d at 549; *see Matter of Kowalsky v Converse*, 79 AD3d 1310, 1311 [2010]). Although the father consistently met his child support obligations to the mother, we agree with Family Court that this alone does not overcome these other significant factors. We likewise find no reason to disturb Family Court's best interests analysis and award of custody to Savage, which are also fully supported by the record and were properly addressed only after the court's finding of extraordinary circumstances (*see Matter of Loukopoulos v Loukopoulos*, 68 AD3d at 1471-1472).

Spain, J.P., Kavanagh, Stein and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.