# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  February 26, 2015                    516722
_____

In the Matter of BILLY J.
    CURLESS,
                    Appellant,

        v

CAITLYN M. McLARNEY,
                    Respondent.

(Proceeding No. 1.)

(And Two Other Related Proceedings.)
_____            MEMORANDUM AND ORDER

In the Matter of KATHLEEN
    McLARNEY,
                    Respondent,

        v

BILLY J. CURLESS,
                    Appellant,

        and

CAITLYN M. McLARNEY,
                    Respondent.

(Proceeding No. 4.)
_____


Calendar Date:  January 15, 2015

Before:  Lahtinen, J.P., Garry, Devine and Clark, JJ.

                    _____


        Jehed Diamond, Delhi, for appellant.

        Larisa Obolensky, Delhi, for Caitlyn M. McLarney,
respondent.

Nancy K. Deming, Delhi, for Kathleen McLarney, respondent.

Joseph A. Nalli, Fort Plain, attorney for the child.

_____

Garry, J.

Appeal from an order of the Family Court of Delaware County (Becker, J.), entered April 1, 2013, which, among other things, granted petitioner's application, in proceeding No. 4 pursuant to Family Ct Act article 6, to modify a prior order of custody.

Billy J. Curless (hereinafter the father) and Caitlyn M. McLarney (hereinafter the mother) are the unmarried parents of a son (born in 2009). Kathleen McLarney is the child's maternal grandmother (hereinafter the grandmother). The parents resided together until the child was about four to six months old, at which time the father was incarcerated for violating parole, and served a portion of his sentence in an inpatient substance abuse treatment facility, where he did not see the child. Thereafter, the mother resided with the child at the grandmother's home in Delaware County, with the exception of two periods in 2010, during which the child briefly resided only with the mother, but continued regular contact with the grandmother. After his release, the father had visitation for two hours every two weeks, supervised by the grandmother. During that time, a series of orders of protection were in place against the father that allowed visitation, including one directing the father to refrain from threatening, harassing or engaging in criminal conduct against the mother or child. In sum, both parents have had some continuing involvement in parenting the child, who has lived in the grandmother's home for most of his life, including periods during which each of the parents was incarcerated.

In October 2011, Family Court issued an order following a hearing awarding the parents joint custody, with primary residence with the mother, "provided that she continue to reside with [the grandmother]," and parenting time to the father three weekends per month. The court found that the parents had both

engaged in criminal activity and had substance abuse problems, had a "deeply troubled and conflict-ridden relationship," and that the mother was the parent more likely to nurture a relationship between the child and the other parent. The court also found that the father had "acted in an abusive and controlling manner toward [the mother] before and during her pregnancy" and determined that he had committed that family offense during the mother's pregnancy. No appeal was taken from that order.

In late 2011, the mother was incarcerated for violating probation. The child continued to reside with the grandmother. The father commenced the first two custody proceedings seeking primary physical custody of the child, and the grandmother was deemed an interested party. During this same period, at the recommendation of the child's health care provider, the mother and grandmother had the child evaluated and he started weekly sessions with a speech therapist in the grandmother's home to address his delayed development in speech and communication and other behavioral problems. After the mother was sentenced to a prison term of 1⅓ to 4 years upon the probation violation, the father petitioned for sole legal and residential custody, and the grandmother filed a petition seeking primary physical custody. The mother, whose conditional release date was in January 2013, opposed the father's petitions. Prior to conducting the fact-finding hearing upon these petitions, Family Court made a temporary order directing alternating weekly physical custody of the child between the homes of the grandmother and the father. This schedule was subsequently modified during the course of the hearings in 2012, with the court directing that the child reside with the grandmother during each week, and with the father on the weekends, for the purpose of allowing the child to obtain necessary early intervention services through the school district on a consistent basis.

Family Court ultimately determined that the grandmother had demonstrated extraordinary circumstances and awarded her primary physical custody, with joint custody shared by the parents and grandmother, and directed parenting time with the father every weekend from Friday to Sunday. In rendering this decision, the court specifically referenced the child's significant speech

delays, which required intensive therapeutic intervention, finding that if these profound deficits were not addressed, the child's progress, readiness for school and long-term success could be jeopardized. The father appeals.

We affirm. Initially, Family Court's finding of extraordinary circumstances is supported by the record. It is clear and settled that a "parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (Matter of Tennant v Philpot, 77 AD3d 1086, 1087 [2010] [internal quotation marks and citations omitted]; see Matter of Michael B., 80 NY2d 299, 309 [1992]). "It is the nonparent's burden to establish extraordinary circumstances and, when that burden is met, custody is determined based upon the child's best interests" (Matter of Marcus CC. v Erica BB., 107 AD3d 1243, 1244-1245 [2013], appeal dismissed 22 NY3d 911 [2013] [citations omitted]). The pertinent factors to be considered in determining whether extraordinary circumstances exist "include the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the biological parent allowed such custody to continue without trying to assume the primary parental role" (id. at 1244 [internal quotation marks and citation omitted]; accord Matter of Golden v Golden, 91 AD3d 1042, 1043 [2012]), an analysis that considers "the cumulative effect of all issues present in a given case" (Matter of Pettaway v Savage, 87 AD3d 796, 797 [2011], lv denied 18 NY3d 801 [2011] [internal quotation marks and citations omitted]).

Contrary to the father's claim, Family Court made a finding of extraordinary circumstances. The court made factual findings that concerned both the threshold extraordinary circumstances and best interests rulings; although the factors were not discussed separately, the basis for the findings was adequately stated.[1]

_____

[1] As there was no prior judicial finding of extraordinary circumstances, it was not necessary to establish a change in circumstances (see Matter of McBride v Springsteen-El, 106 AD3d

We conclude that the record is sufficient to support these findings and, by this Court's exercise of independent authority, further find that additional factors support the determination (see Matter of Roth v Messina, 116 AD3d 1257, 1258-1259 [2014]; Matter of Ramos v Ramos, 75 AD3d 1008, 1010 [2010]).

Applying the relevant factors, the child, who was 3½ years of age at the time of Family Court's decision, has lived with the grandmother for most of his life with only short interruptions, and remained with her after the mother's incarceration in January 2012; aside from a short period in which he alternated his time weekly between the father and the grandmother, the child has since resided with the grandmother, with weekends at the father's home. In his first two years of life, the child's visits with the father were limited by the father's incarceration and inpatient substance abuse treatment, as well as the supervised visitation stemming from domestic violence. Notably, the father has consistently exercised his visitation and has made clear efforts to increase his role in the child's life. Unfortunately, he has fallen behind on the child support obligations.

The grandmother has a very close and nurturing relationship with the child, was supportive of the mother, willingly supervised the father's visitation, pursued recommended speech therapy, utilized her education and training to improve his speech and other delayed skills and reinforced his therapy. The child experienced notable developmental improvements until he began alternating weekly between households, and again after he resumed residing every week with the grandmother. The child's speech pathologist recounted the grandmother's active participation in therapy and follow-up reinforcement, the child's initial progress but ongoing developmental delays and inconsistent progress, and the need for more consistent services. She opined that the child did best with the grandmother reinforcing tasks and required "a lot of structure," daily family reinforcement of therapy, and adult contact.

---

1402, 1404 [2013]).

Considering all of the testimony, the parties' history and the child's developmental needs, the record supports Family Court's finding that the grandmother "is uniquely qualified to oversee [the child's] therapeutic regime" and to "reinforce [his] treatment," while the father's home and schedule afforded "little parenting time for individual attention" to the child. The testimony further supports the court's finding that the father "does not understand or refuses to accept the [severity] of [the child's] developmental delay and the dire implications such delay presents," and had shown "less than enthusiastic support of therapeutic services." According deference to Family Court's credibility determinations and factual findings (see Matter of Pettaway v Savage, 87 AD3d at 799), and considering the combined effect of all of the factors in this case, we find that the grandmother met her burden of demonstrating that extraordinary circumstances exist "which would drastically affect the welfare of the child" (Matter of Bennett v Jeffreys, 40 NY2d 543, 549 [1976]; see Matter of Battisti v Battisti, 121 AD3d 1196, 1197-1198 [2014]; Matter of Golden v Golden, 91 AD3d at 1043-1045; Matter of Lori MM. v Amanda NN., 75 AD3d 774, 775-776 [2010]).

We also find that the record evidence supports Family Court's finding that the best interests of the child warrant an award of primary physical custody to the grandmother. "[W]hether a given modification will serve the best interests of the child is determined by considering factors such as maintaining stability in the child[ ]'s [life], the quality of the respective home environments, the length of time the present custody arrangement has been in place and each [party's] past performance, relative fitness and ability to provide for and guide the child[ ]'s intellectual and emotional development" (Matter of Battisti v Battisti, 121 AD3d at 1198 [internal quotation marks and citation omitted]). The record establishes that the father, who was still on parole at the time of the fact-finding hearing, lives in a three-bedroom duplex with his girlfriend and their then-newborn child, as well as the girlfriend's toddler and the father's two older children from a prior relationship, ages 8 and 10, who visit every weekend. The girlfriend works full time, including some weekends, while the father had a variety of factory and construction jobs, and they attempt to work different shifts to cover their responsibilities

at home.  The grandmother, a full-time special education teacher for 20 years, lives with the child and her 13-year-old son.  She has always cared for the child while he lived with her, taking him to doctors' appointments and reinforcing his therapy.  During the course of the hearing, the child was making progress in an integrated preschool program.  This program employs a special education teacher and two other early education teachers, and the child receives speech therapy three times per week and occupational therapy twice per week, in accord with his individualized education program.

The record also reveals that the father had little to no contact or communication with the mother or the grandmother, and they generally did not speak or share information with one another about the child or attempt to coordinate his routines. We accord great deference to Family Court's findings that the father was "hostile in his attitude" to the mother and grandmother and "would not be cooperative with [them,] nor does it appear that he is particularly committed to nurturing their relationship with [the child]" (see Matter of Marcus CC. v Erica BB., 107 AD3d at 1246), and that "the already high stress level" in the father's household raised serious concerns as to whether the child's needs would be fully met were he to reside there. Accordingly, while there are factors supporting both sides, the record as a whole supports Family Court's best interests determination (see Matter of Battisti v Battisti, 121 AD3d at 1198).

Lahtinen, J.P., Devine and Clark, JJ., concur.

ORDERED that the order is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court