■ In the Matter of CHARLES T. RUMPFF, Respondent, v TIFFANY SCHORPP et al., Appellants. ATTORNEY FOR THE CHILDREN, Appellant. [21 NYS3d 374]—

Garry, J. Appeal from an order of the Family Court of Schuyler County (Morris, J.), entered December 26, 2013, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent Chastity Schorpp (hereinafter the mother) are the parents of two children (born in 2005 and 2008). Shortly after the younger child's birth, the Schuyler County Department of Social Services (hereinafter DSS) commenced neglect proceedings against both parents alleging, as relevant here, that they failed to provide the children with adequate supervision and guardianship as a result of their drug and alcohol abuse. In June 2008, the parents consented to the temporary placement of the children with the maternal grandmother, respondent Tiffany Schorpp (hereinafter the grandmother); later in 2008, they consented to neglect adjudications and continued placement of the children with the grandmother. Thereafter, the grandmother petitioned for sole custody, and, in December 2009, by stipulation of all the parties, Family Court entered an order giving joint legal custody pursuant to Family Ct Act article 6 to the father, mother and grandmother and physical placement to the grandmother. In February 2011, the father filed a modification petition seeking physical custody of the children. This application was resolved in October 2011 by an order entered upon the consent of all parties, continuing the previous custody arrangements.

In March 2013, the father commenced this proceeding seeking sole custody of the children. Following a fact-finding hearing, Family Court granted sole legal custody and physical

placement to the father, with parenting time for the mother and visitation for the grandmother. The mother, grandmother and attorney for the children each appeal.

In a custody dispute between a parent and a nonparent, the "parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (*Matter of Curless v McLarney*, 125 AD3d 1193, 1195 [2015] [internal quotation marks and citation omitted]; *see Matter of Michael B.*, 80 NY2d 299, 309 [1992]; *Matter of Bennett v Jeffreys*, 40 NY2d 543, 549 [1976]). An order placing a child in a nonparent's custody upon a parent's consent is neither a judicial finding nor an admission of extraordinary circumstances (*see Matter of Liz WW. v Shakeria XX.*, 128 AD3d 1118, 1120 [2015], *lv dismissed* 25 NY3d 1195 [2015]; *Matter of McDevitt v Stimpson*, 281 AD2d 860, 861-862 [2001]). Here, no finding of extraordinary circumstances had previously been made. Thus, in the current proceeding, the grandmother bore the burden of establishing the existence of extraordinary circumstances. Only if this threshold showing was met could Family Court reach the issue of the children's best interests (*see Matter of McBride v Springsteen-El*, 106 AD3d 1402, 1403-1404 [2013]).

Factors to be taken into account in determining whether extraordinary circumstances exist "include the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the parent allowed such custody to continue without trying to assume the primary parental role" (*Matter of Battisti v Battisti*, 121 AD3d 1196, 1197 [2014] [internal quotation marks, ellipsis and citation omitted]; *see Matter of Bevins v Witherbee*, 20 AD3d 718, 719 [2005]). We agree with Family Court that the record did not demonstrate that the father had surrendered, abandoned or neglected the children or was otherwise unfit, but that, considered in the light of all the circumstances, the children's lengthy placement with the grandmother was an "extended disruption of custody" (Domestic Relations Law § 72 [2] [b]) sufficient to constitute extraordinary circumstances.

The testimony established that the older child spent extended periods living with the grandmother even before being formally placed in the grandmother's care in 2008; following that placement, she and the younger child lived continuously with the grandmother for the next five years. The father acknowledged that he had not acted as a responsible parent to the children

during the early years of their lives, that the grandmother had been the children's primary caretaker for years and that, as a result, the children had developed a very strong emotional bond with her. Taking into account "the cumulative effect" of these factors and the length of the children's residence with the grandmother (*Matter of Melody J. v Clinton County Dept. of Social Servs.*, 72 AD3d 1359, 1362 [2010], *lv denied* 15 NY3d 703 [2010]; *accord Matter of Pettaway v Savage*, 87 AD3d 796, 797 [2011], *lv denied* 18 NY3d 801 [2011]), we agree with Family Court that extraordinary circumstances existed that then "required an examination by the court into the best interest[s] of the child[ren]" (*Matter of Bennett v Jeffreys*, 40 NY2d at 550; *see Matter of Bevins v Witherbee*, 20 AD3d at 719-720 [2005]).*

We agree with the grandmother, the mother and the attorney for the children that Family Court's best interests analysis was significantly flawed, as it was improperly premised in part upon a continued superior parental right to custody following the determination that extraordinary circumstances had been established. Following a finding of extraordinary circumstances, the analysis of a child's best interests is to be "guided by principles which reflect a considered social judgment in this society respecting the family and parenthood [but] do not, however, dictate that the child's custody be routinely awarded to the . . . parent" (*Matter of Bennett v Jeffreys*, 40 NY2d at 549 [internal quotation marks and citation omitted]). No continuing preference for the parent over the nonparent is part of the analysis; instead, factors to be taken into account include the parties' respective abilities to provide stable homes for the children, their relationships with the children and ability to guide and provide for them, the children's wishes and "[the parties'] willingness to foster a positive relationship between the child[ren] and the other party" (*Matter of Loukopoulos v Loukopoulos*, 68 AD3d 1470, 1472 [2009]; *see Matter of Ronald I. v James J.*, 53 AD3d 706, 708 [2008]).

Here, Family Court was presented with a very close call in assessing the relative benefits of allowing the children to remain with the grandmother or transferring them to the primary custody of the father. It bears emphasizing at the outset that both the father and the grandmother appear to be loving and capable caretakers. To their great credit, the father

---

* Family Court's determination that the father had shown a change in circumstances following the 2011 order was unnecessary, as there had been no prior finding of extraordinary circumstances (*see Matter of McBride v Springsteen-El*, 106 AD3d at 1404; *Matter of Cusano v Milewski*, 68 AD3d 1272, 1273 [2009]).

and grandmother each recognize and honor the other's importance to the children and have worked to maintain a mutually respectful relationship for their benefit. Both parties testified that they feel no animosity toward each other and have been able to work out difficulties as they arose. The grandmother stated that she is proud of the father's success and "think[s] the world of [him]," the father praised the grandmother's role in raising and supporting the children, and both parties testified that they encouraged the children to communicate and maintain positive relationships with the other party.

The record reveals that the father has matured and made substantial improvements in his life. He successfully completed drug rehabilitation in 2008 and stated that he has used no illegal substances at any time since. At the time of the 2013 hearing, he had maintained stable full-time employment for three years. He was married in 2012 and resides in a newly-purchased four-bedroom home in Cortland County with his wife and her two younger siblings, of whom the wife has legal custody. The father testified that the home is located in a good neighborhood with schools and playgrounds close by. By all accounts, the wife has an excellent relationship with the children. The father testified that the children also have good relationships with the wife's siblings and enjoy contact with the paternal grandmother, who lives nearby.

The grandmother's home in Schuyler County is also suitable for the children, although her apartment is smaller. The grandmother resides on the outskirts of town and she has no car, so that she must look to friends and relations for assistance in transporting the children to appointments and activities. As previously noted, she has been the children's primary caretaker for most of their lives and they have strong emotional bonds with her. At the time of the hearing, the mother resided in a halfway house in another county as part of a drug rehabilitation program, and visited the children at the grandmother's home. Accordingly, the opportunities for the children to have contact with the mother were enhanced if they resided with the grandmother.

The attorney for the children advocated for the children to remain with the grandmother. The grandmother testified that her opposition to placement with the father was premised primarily upon the children's preferences; she testified that the children did not want to reside with the father, and the mother also testified to this effect. While this testimony was hearsay, the father did not dispute it, stating that he was aware of the

children's preferences and understood them in view of their long residence with the grandmother, but believed that the time had come for him to assume the role of primary caregiver, and that the children would adjust successfully following a gradual transition into his care. Unfortunately, it does not appear that this has occurred; notably, upon this appeal, the attorney for the children continues to strenuously advocate for primary custodial placement with the grandmother, despite the passage of a considerable period of time since the initial disposition.

The children's wishes are not dispositive, but they are certainly entitled to consideration (*see Eschbach v Eschbach*, 56 NY2d 167, 173 [1982]; *Matter of Rivera v LaSalle*, 84 AD3d 1436, 1438 [2011]; *Matter of Valenti v Valenti*, 57 AD3d 1131, 1136 [2008], *lv denied* 12 NY3d 703 [2009]). We are concerned, based upon their counsel's argument, that the expressed wishes of the children apparently have not changed with the passage of time, as the father had anticipated. For this reason, although our powers in custody matters are as broad as those of Family Court (*see Matter of Louise E.S. v W. Stephen S.*, 64 NY2d 946, 947 [1985]; *Matter of Welch v Welch*, 39 AD3d 910, 910-911 [2007], *lv dismissed* 9 NY3d 988 [2007]), we are unwilling to render a determination of the children's best interests based solely upon review of a roughly two-year-old record. Accordingly, in light of the error in the initial determination, we remit the matter to Family Court for further development of the record and consideration of the factors pertinent to the children's best interests.

Lahtinen, J.P., Egan Jr. and Clark, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as awarded sole legal and physical custody to petitioner; matter remitted to the Family Court of Schuyler County for further proceedings not inconsistent with this Court's decision and, pending said proceedings, the terms of said order shall remain in effect on a temporary basis; and, as so modified, affirmed.