■ In the Matter of HEATHER U., Appellant, v JANICE V., Respondent, et al., Respondents. (And Two Other Related Proceedings.) [57 NYS3d 762]—

Lynch, J. Appeal from an order of the Family Court of Tioga County (Keene, J.), entered March 22, 2016, which, among

---

other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the mother) and respondent John W. are the unmarried parents of a child born in 2009. When the child was approximately three months old, the mother and child moved from out of state to live with respondent Janice V. (hereinafter the great-grandmother) at her home in Tioga County. The mother and child left and returned to the great-grandmother's residence a number of times during the following years, often for extended periods. In August 2014, when the mother was not residing with the great-grandmother, the mother called the great-grandmother and asked her to take the child because she feared she was going to be arrested. Since then, the child has resided with the great-grandmother. The great-grandmother filed a petition for custody, and, in February 2015, Family Court issued an order granting joint legal custody of the child to the mother and the great-grandmother, with primary physical custody to the great-grandmother and parenting time to the mother as could be agreed, but at least during the day each Sunday. Relevant here, the February 2015 order also directed the mother to ensure that one specific male individual (hereinafter the mother's friend) not have contact with the child and prohibited the mother from having any unrelated individuals present during her parenting time. The order reserved to the mother the right to file a petition for modification at the end of the school year without having to demonstrate a change in circumstances.

On June 25, 2015, the mother filed a modification petition seeking sole legal and physical custody of the child. After a fact-finding hearing, Family Court awarded joint legal custody to the mother and great-grandmother, primary physical custody to the great-grandmother and granted the mother overnight parenting time each weekend. The mother now appeals and we affirm.

"[I]t is well settled that a parent has a claim of custody of his or her child that is superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness, disruption of custody over a prolonged period of time or the existence of other extraordinary circumstances" (*Matter of Evelyn EE. v Ayesha FF.*, 143 AD3d 1120, 1124 [2016] [internal quotation marks and citations omitted], *lv denied* 28 NY3d 913 [2017]). Here, because the parties agreed that the February 2015 order was not made after a finding of extraordinary circumstances, the great-grandmother bore the burden of establishing this

threshold element on the mother's modification petition (*see Matter of Rumpff v Schorpp*, 133 AD3d 1109, 1110 [2015]). If this burden is met, a court may consider what custodial arrangement is in the child's best interests (*see Matter of Peters v Dugan*, 141 AD3d 751, 752-753 [2016]).

The testimony established that, from the time that the child was born, the mother moved with him at least 12 times. During this time, the mother and child would return intermittently to reside with the great-grandmother for extended periods. In August 2014, when the child was five years old, the mother and child were living with the mother's friend. The mother's friend disciplined the child by striking him in the mouth as he was squatting against a wall with a wet pair of pants on his head. The event was videotaped, and the video was shown during the hearing. The child could be heard crying, and the mother's friend struck the child with such force that he was knocked to the ground. During her testimony, the mother diminished this event, described it as a "big mess" and questioned why the police and child protective services had to be involved because the mother's friend merely "popped" the child in the head, causing him to lose his balance.

The mother claimed during her direct testimony that she complied with the February 2015 order and prohibited contact between the mother's friend and her child. During her crossexamination, however, she admitted that she invited his children on an outing with the child, the mother's friend was there, and a domestic dispute ensued resulting in police involvement. Further, the mother's testimony that she did not have unrelated individuals present during her parenting time was belied by the testimony of an unrelated individual who explained that he was a friend and had spent time with the child and the mother during a day trip to a nearby waterfall, at his home two or three times, at two different restaurants and during several car rides.

The mother acknowledged during her testimony that an individualized education program was in place for the child but explained that it was merely to address behavioral concerns. The child's teachers testified that, during the 2014-2015 school year, the child was physically aggressive with other students, teachers and special education staff, would hiss and growl and hide under tables and, because he was dangerous to himself and others, was only allowed to attend school for half days. The great-grandmother arranged for the child to obtain mental health treatment, and his therapist testified that he suffered "unspecified stress trauma related disorder." Consequently, the

child is prescribed medication to reduce his anxiety. The teachers and mental health providers testified that, since obtaining treatment, the child was able to attend school and that his behavior was markedly improved. The mother characterized the child's behavior as "normal tantrum[s]" and explained that "his dad [is] a psycho and it probably transferred." The mother conceded that she did not participate in the child's therapy or remain involved in the services provided by the school district, but she blamed this on the failure of the mental health providers, school district and great-grandmother to keep her informed.

Generally, "[t]he extraordinary circumstances analysis must consider the cumulative effect of all issues present in a given case, including, among others, the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the parent allowed such custody to continue without trying to assume the primary parental role" (*Matter of Peters v Dugan*, 141 AD3d at 753 [internal quotation marks and citations omitted]; *see Matter of Pettaway v Savage*, 87 AD3d 796, 797 [2011], *lv denied* 18 NY3d 801 [2011]). Here, while the mother petitioned for custody as soon as the school year was over, she refused to comply with the provisions of the prior court order that were designed to safeguard the child. She minimized the child's mental health needs and expressed lackluster support for his continued treatment despite the unanimous belief that such treatment was necessary and had contributed to his improved performance at school. As noted by Family Court, the mother's reaction to the abuse of her child demonstrates "shocking . . . poor judgment." When we defer to Family Court's credibility determinations and factual findings and consider the cumulative effect of the issues presented, we find sound and substantial support for its finding that the great-grandmother established the requisite extraordinary circumstances (*see Matter of Curless v McLarney*, 125 AD3d 1193, 1197 [2015]).

Turning now to the best interests analysis, the pertinent factors to be considered are "maintaining stability in the child's life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (*Matter of Peters v Dugan*, 141 AD3d at 753-754 [internal quotation marks and citations omitted]). Here, while the child moved with the mother frequently, he returned to reside in the great-grandmother's home most often and for the longest duration. Although the mother argued that

no one would give her information about the child, she was entitled to seek and obtain both medical and educational records at any time yet did not follow through, leaving the great-grandmother to assume responsibility for obtaining appropriate services for the child. Further, despite the unequivocal opinion by his mental health providers that the child needed stability to continue to make progress, the mother planned to move the child to a new school, was considering moving to a new apartment and planned to place the child in child care before 5:00 a.m. on school days. Like Family Court, we are most concerned with the mother's failure to recognize the severity of the abuse and its effect on the child. In sum, based on the totality of the circumstances, we find that Family Court's determination to continue custody with the great-grandmother is supported by a sound and substantial basis in the record (*see Matter of Erick X. v Keri Y.*, 138 AD3d 1202, 1205 [2016]; *Matter of Sweeney v Sweeney*, 127 AD3d 1259, 1261 [2015]; *Matter of Battisti v Battisti*, 121 AD3d 1196, 1198 [2014]).

Finally, the mother's claim that Family Court erred by allowing the admission of the video showing the mother's friend abusing the child is not preserved for our review (*see Matter of Mitchell WW. [Andrew WW.]*, 74 AD3d 1409, 1411 [2010]).

Peters, P.J., Garry, Clark and Aarons, JJ., concur. Ordered that the order is affirmed, without costs.