Matter of Damascus LL. v Janelle MM. (2019 NY Slip Op 07653)





Matter of Damascus LL. v Janelle MM.


2019 NY Slip Op 07653


Decided on October 24, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 24, 2019

526505

[*1]In the Matter of Damascus LL. et al., Respondents,
v
Janelle MM., Appellant, et al., Respondent. (And Another Related Proceeding.)

Calendar Date: September 4, 2019

Before: Egan Jr., J.P., Clark, Devine, Aarons and Pritzker, JJ.


Michelle E. Stone, Vestal, for appellant.
Liam G.B. Murphy, Ithaca, for Damascus LL. and another, respondents.
Ricky D. Andreorio, Vestal, attorney for the children.



Devine, J.
Appeal from an order of the Family Court of Broome County (Young, J.), entered March 2, 2018, which, among other things, granted petitioners' application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject children.
Respondent Janelle MM. (hereinafter the mother) is the mother of Johanna NN. (born in 2007) and Charleen NN. (born in 2005) (hereinafter the subject children) and two others. Pursuant to a stipulation, an order was issued in 2007 that awarded sole custody of the subject children and their older sister to their maternal great-grandmother and permitted their parents to have reasonable visitation at the great-grandmother's discretion. The subject children thereafter lived with the great-grandmother, her husband and other young relatives in the great-grandmother's care. Petitioner Kyra LL. (hereinafter the cousin) was also raised by the great-grandmother, lived with the great-grandmother for most of the relevant period and returned with her now-husband, petitioner Damascus LL., in 2015.
After the great-grandmother died in 2016, petitioners remained in the home with their newborn baby and petitioned for custody of, as is relevant here, the subject children. The mother filed her own custody petition. Family Court conducted a combined hearing, including a Lincoln hearing, on the petitions. Family Court then ruled from the bench that extraordinary circumstances existed and that the best interests of the subject children would be furthered by granting petitioners and the mother joint legal custody of the subject children, with physical placement to petitioners and agreed-upon visitation with the mother to occur at the great-grandmother's residence. The mother appeals from the ensuing custody order, and we affirm.[FN1]
"[I]n a custody dispute between a parent and a nonparent, a parent's claim to custody of his or her children is superior to that of all others absent a showing of surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or other like extraordinary circumstances" (Matter of Chasity CC. v Frederick DD., 165 AD3d 1412, 1413 [2018] [internal quotation marks, brackets and citations omitted]; see Matter of Karen Q. v Christina R., 170 AD3d 1446, 1447 [2019]). Inasmuch as there has never been a finding of extraordinary circumstances, petitioners bore the burden of showing the existence thereof (see Matter of Melissa MM. v Melody NN., 169 AD3d 1280, 1281 [2019]; Matter of Chasity CC. v Frederick DD., 165 AD3d at 1414). In assessing whether petitioners did so, "[t]he quality of the child[ren's] relationship with the parent and the nonparent, whether the child[ren] had lived with the nonparent for any length of time and any delay by the parent in seeking primary physical placement are all relevant factors" (Matter of Hawkins v O'Dell, 166 AD3d 1438, 1440 [2018]; see Matter of Melissa MM. v Melody NN., 169 AD3d at 1281-1282; Matter of Chasity CC. v Frederick DD., 165 AD3d at 1414).
The mother ceded custody of the subject children to the great-grandmother, and they have lived at the great-grandmother's residence for essentially all of their lives. The cousin also lived there for most of that time, substantially helped the aged great-grandmother in caring for the subject children and assumed responsibility for that care when the great-grandmother died. The subject children have formed a close relationship with the cousin as a result, and the cousin testified that she intends to continue raising them in what they regard as their home.[FN2] The cousin's husband testified that he also has a good relationship with the subject children and helps to care for them when he is home from work. In contrast, the mother made no effort to recover custody of the subject children while the great-grandmother was alive and has had little involvement in raising them. The mother further refused to visit the subject children at their residence after the great-grandmother's death, and their relationship has atrophied to the point where both children have refused to visit her at her residence and behaved disrespectfully toward her. The foregoing provides a sound and substantial basis for Family Court's finding of extraordinary circumstances (see Matter of Sharon D. v Dara K., 130 AD3d 1179, 1180-1181 [2015]; Matter of Battisti v Battisti, 121 AD3d 1196, 1197-1198 [2014]; Matter of Pettaway v Savage, 87 AD3d 796, 797-798 [2011], lv denied 18 NY3d 801 [2011]).
The showing of extraordinary circumstances shifts the inquiry to a best interests analysis, which involves weighing factors that include "maintaining stability in the child[ren's] li[ves], the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child[ren's] intellectual and emotional development" (Matter of Battisti v Battisti, 121 AD3d at 1198 [internal quotation marks, brackets and citations omitted]; accord Matter of Melissa MM. v Melody NN., 169 AD3d at 1282). Stability will be served by maintaining the subject children in their home with a longtime caregiver, and there are no obvious concerns about the suitability of either the caregiver or the home. The mother admitted that she had a good relationship with the cousin, who did not stand in the way of visitation and transported the subject children to and from it. There is also little doubt that the mother has a strained relationship with the subject children, and Family Court expressed skepticism as to whether the mother would succeed in her plans to expand her already-crowded residence to make room for them. Thus, "[w]hen we give the requisite deference to [its] credibility determinations, we find that there is a sound and substantial basis in the record to support Family Court's determination" with regard to both custody and visitation (Matter of Melissa MM. v Melody NN., 169 AD3d at 1283; see Matter of Sweeney v Daub-Stearns, 166 AD3d 1340, 1342 [2018]; Matter of Battisti v Battisti, 121 AD3d at 1198).
Egan Jr., J.P., Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Respondent William NN., the father of the subject children, had not seen them since 2007, expressed his support for petitioners' application for custody and has not participated in this appeal.

Footnote 2: Although there was some dispute on the point, the cousin testified that title to the great-grandmother's home was in trust and would eventually pass to her.