This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 198
In the Matter of Ricardo Suarez,
et al.,
          Appellants,
        v.
Melissa Williams, et al.,
          Respondents.

Linda M. Campbell, for appellants Suarez.
Patrick J. Haber, for appellant child.
Christopher M. Judge, for respondent Williams.

STEIN, J.:

        This custody dispute between a child's mother and

paternal grandparents concerns the interpretation and application

of Domestic Relations Law § 72 (2) and this Court's decision in

Matter of Bennett v Jeffreys (40 NY2d 543 [1976]).  We hold that

grandparents may demonstrate standing to seek custody based on

- 1 -

extraordinary circumstances where the child has lived with the grandparents for a prolonged period of time, even if the child had contact with, and spent time with, a parent while the child lived with the grandparents.  Hence, we reverse and remit to the Appellate Division for consideration of issues raised, but not reached, by that Court.

                              I.

     The child at issue here (born 2002) lived with his paternal grandparents, beginning when he was less than 10 days old and continuing until he was almost 10 years old.  The child's father moved out of state in 2004 and has had visitation since then.  The child's mother lived approximately 12 miles from the grandparents for the child's first few years, until the grandparents moved the mother (and her daughters from a previous relationship) into a trailer that the grandparents purchased and situated in a trailer park across the street from their residence, so she would be close to the child.  In a 2006 proceeding in which the grandparents were not involved, the child's parents obtained a consent order awarding the parents joint legal custody, with primary physical custody to the mother.  Nevertheless, the reality of the family's situation did not change; the child continued to reside with the grandparents.  Also in 2006, the grandparents moved to an adjoining county.  Due to the distance between their homes, the mother had less contact with the child until late 2008, when the grandparents again

helped her move closer to them.  The grandparents evidently kept the mother informed of the child's activities almost daily.  In addition, the mother saw the child regularly including, at times, weekly overnight visits and vacations.  In 2010, the mother began a relationship with a new boyfriend, and they gradually began making plans to live together.  In 2012, after the father sought custody from the mother and a termination of his child support payments to her,[1] she refused to return the child to the grandparents after a visit, relying on the 2006 custody order granting her primary physical custody.  At that time, the mother told the grandparents that they had had the child for many years, it was her "turn now," and they could no longer see him.

As a result, the grandparents commenced this proceeding seeking primary physical custody of the child.[2]  Following a 10-day hearing, Family Court found that the mother was generally not credible and that "the [g]randparents' version of where [the child] lived since birth is the substantiated and more accurate representation of reality."  The court found that there had been an extended disruption of custody between the mother and the child, and that the mother voluntarily relinquished care and control of him to the grandparents -- through three written

---

[1] Although the father was regularly paying child support to the mother, she did not provide the grandparents with any money for the child's care.

[2] The father withdrew his custody petition against the mother and supported the grandparents' petition.

documents and through her behavior -- and concluded that this amounted to extraordinary circumstances.  The court then considered the child's best interest and granted joint custody to the grandparents and the father, with primary physical custody to the grandparents and visitation to each parent.

The Appellate Division reversed and dismissed the grandparents' petition (128 AD3d 20 [4th Dept 2015]).  Specifically declining to disturb Family Court's credibility determinations, the Appellate Division found the situation to be akin to joint custody, with the grandparents having primary physical custody and the mother having visitation.  Nevertheless, the Court held that the grandparents failed to demonstrate extraordinary circumstances, in light of the mother's presence in the child's life, even though he was primarily living with the grandparents.  Thus, the Court concluded that the grandparents lacked standing to seek custody and dismissed their petition. This Court granted the grandparents leave and a stay pending appeal (25 NY3d 1063 [2015]).

II.

In the seminal case of <u>Matter of Bennett v Jeffreys</u>, we created a two-prong inquiry for determining whether a nonparent may obtain custody as against a parent (<u>see</u> 40 NY2d at 546-548). First, the nonparent must prove the existence of "extraordinary circumstances" such as "surrender, abandonment, persisting neglect, unfitness, and unfortunate or involuntary disruption of

custody over an extended period of time" (id. at 546), "or other like extraordinary circumstances" (id. at 544).  If extraordinary circumstances are established such that the nonparent has standing to seek custody, the court must make an award of custody based on the best interest of the child (see id. at 548).

Consistent with that case, Domestic Relations Law § 72 (2) contains a specific example of extraordinary circumstances. Originally, Domestic Relations Law § 72 addressed only grandparent visitation.  However, in recognition of the important role of grandparents and the increasing number of grandparents raising their grandchildren, the Legislature amended the statute in 2003 to include a second subdivision, pertaining to custody (see L 2003, ch 657, § 2; Matter of Carton v Grimm, 51 AD3d 1111, 1112 n [3d Dept 2008], lv denied 10 NY3d 716 [2008]).  That subdivision provides that "[w]here a grandparent . . .  of a minor child . . . can demonstrate to the satisfaction of the court the existence of extraordinary circumstances, such grandparent . . . may apply to family court [for custody]," and the court "may make such directions as the best interests of the child may require, for custody rights for such grandparent . . . in respect to such child.  An extended disruption of custody, as such term is defined in this section, shall constitute an extraordinary circumstance" (Domestic Relations Law § 72 [2] [a] [emphasis added]).  The statute then defines "extended disruption of custody" to

"include, but not be limited to, a prolonged separation of the respondent parent and the child for at least [24] continuous months during which the parent voluntarily relinquished care and control of the child and the child resided in the household of the petitioner grandparent or grandparents, provided, however, that the court may find that extraordinary circumstances exist should the prolonged separation have lasted for less than [24] months" (Domestic Relations Law § 72 [2] [b]).

The legislative intent, as stated in the bill enacting this amendment, was "to provide guidance regarding the ability of grandparents to obtain standing in custody proceedings involving their grandchildren," but was "in no way intended to limit the state of the law as it relates to the ability of any third party to obtain standing in custody proceedings" against a birth parent (L 2003, ch 657, § 1). The sponsors' memoranda articulate the purpose of the bill as being "[t]o define an extraordinary circumstance with respect to the legal rights of certain grandparents who wish to petition the court for custody of their grandchildren" (Senate Sponsor's Memo at 1; Assembly Sponsor's Memo at 1; see Matter of Carton, 51 AD3d at 1113). The sponsors emphasized that the bill specifically states that it is not intended to overrule existing case law relating to third parties obtaining standing in custody cases (see Senate Sponsor's Memo at 1; Assembly Sponsor's Memo at 1). In addressing the law as it existed before the amendment, the sponsors stated that the "[c]urrent statute does not specifically grant grandparents standing to petition the court for custody of their

grandchildren[,] nor does [it] give specific guidance to the court in regard to extraordinary circumstances as they might apply to children who have resided with their grandparents" (Senate Sponsor's Memo at 2; Assembly Sponsor's Memo at 2).

Although the mother contends otherwise, the statute is entirely consistent with Matter of Bennett v Jeffreys, in that it requires that grandparents prove the existence of extraordinary circumstances in order to demonstrate standing when seeking custody against a child's parent.  Indeed, the budget report on the bill indicates that it "simply clarifies in statute that grandparents specifically can petition for custody" (Budget Report on Bills, L 2003, ch 657, Bill Jacket at 5).  Thus, the purpose of the statute is plain -- it creates a clear path, or procedural mechanism, for grandparents to obtain standing when seeking custody (see Matter of E.S. v P.D., 8 NY3d 150, 157 [2007]; Matter of Wilson v McGlinchey, 2 NY3d 375, 380 [2004]; see also Debra H. v Janice R., 14 NY3d 576, 597 [2010]).  The statute does not create new rights for grandparents, but merely clarifies a method by which grandparents may exercise those rights, and defines an alternative type of extraordinary circumstance applicable only to grandparents -- specifically, an extended disruption of custody -- in view of their special status (see Matter of Tolbert v Scott, 15 AD3d 493, 495-496 [2d Dept

2005]).[3]

                              III.

          Domestic Relations Law § 72 (2) sets forth three

"elements" required to demonstrate the extraordinary circumstance

of an "extended disruption of custody," specifically: (1) a

24-month separation of the parent and child, which is identified

as "prolonged," (2) the parent's voluntary relinquishment of care

and control of the child during such period, and (3) the

residence of the child in the grandparents' household.  Regarding

the third element, inasmuch as both Family Court and the

Appellate Division found that the child primarily lived with the

grandparents for almost 10 years, and that factual finding is

supported by the record, we may not disturb it (see Matter of

E.S., 8 NY3d at 158; Matter of Gabrielle HH., 1 NY3d 549, 550

[2003]).  Consequently, only the first two elements are seriously

in dispute here.

          The mother argues that the separation of the parent and

child must be nearly complete and that the parent must relinquish

all care and control, with little or no contact between the

parent and child, in order for the first two elements to be

---

[3] To the extent the grandparents and attorney for the child
argue that the Appellate Division decision could be read as
finding the statute to be unconstitutional, we note that the
statute's constitutionality was not challenged in either that
Court or Family Court.  Moreover, our reading of the Appellate
Division decision leads us to conclude that the constitutional
issue was not addressed therein.  Thus, that issue is not before
us.

established.  She contends that no prolonged separation occurred

here because she had regular contact with the child.  She also

contends that she did not relinquish care and control because she

cared for the child on regular visits, including overnights and

vacations, and because the grandparents obtained, and acted with,

her permission when making decisions about him.[4]

Contrary to the mother's contention, a lack of contact

is not a separate element under the statute.  Indeed, there is no

explicit statutory reference to contact or the lack thereof.

Rather, the quality and quantity of contact between the parent

and child are simply factors to be considered in the context of

the totality of the circumstances when determining whether the

parent voluntarily relinquished care and control of the child,

and whether the child actually resided with the grandparents for

the required "prolonged" period of time.  Indeed, some Appellate

Division cases have identified a variety of factors for courts to

---

[4] The mother also erroneously argues that the standard for
extraordinary circumstances requires the parent to engage in
gross misconduct or utter irresponsibility.  This Court has used
such language, but we did so in a case decided almost 20 years
before Domestic Relations Law § 72 (2) was enacted.  That case
involved a mother who had turned her child over to potential
adoptive parents after agreeing to an adoption -- which would
have resulted in a permanent termination of all parental rights -
- and, soon thereafter, changed her mind and tried to regain care
and control of her child (see Matter of Male Infant L., 61 NY2d
420, 427 [1984]).  The language requiring gross misconduct or
utter irresponsibility should not be taken out of context to
further heighten the standard for establishing standing in all
nonparent custody cases, where the parents -- although
potentially being deprived of custody -- otherwise retain their
parental rights.

consider in determining whether extraordinary circumstances exist, such as "the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the biological parent allowed such custody to continue without trying to assume the primary parental role" (Matter of Bevins v Witherbee, 20 AD3d 718, 719 [3d Dept 2005]; see Matter of Curless v McLarney, 125 AD3d 1193, 1195 [3d Dept 2015]; Matter of Aida B. v Alfredo C., 114 AD3d 1046, 1048 [3d Dept 2014]; Matter of Marcus CC. v Erica BB., 107 AD3d 1243, 1244 [3d Dept 2013], appeal dismissed 22 NY3d 911 [2013]; Matter of Michael G.B. v Angela L.B., 219 AD2d 289, 294 [4th Dept 1996]). All of these factors are components of the totality of the circumstances for the court to consider, and also relate to the enumerated elements under the statute.

It would be illogical to construe the statute to mean that, in order to establish an extended disruption of custody, the grandparent must demonstrate that the parent had no contact with the child for 24 months. If that were the case, the statute would be superfluous or redundant of the extraordinary circumstances specifically enumerated in Matter of Bennett v Jeffreys. Indeed, the level of contact between the parent and child is relevant to several different categories of extraordinary circumstances under that case. For example, Matter of Bennett v Jeffreys refers to abandonment as an extraordinary circumstance (see 40 NY2d at 546). Pursuant to Social Services

Law § 384-b (5), abandonment occurs -- in the context of a complete termination of parental rights -- when a parent evinces an intent to forgo parental rights and obligations as manifested by a failure to visit the child and communicate with the child or guardian.  This Court has held that, for purposes of determining whether extraordinary circumstances exist to demonstrate standing to seek custody of a child, the definition of abandonment does not differ from the traditional definition (see Matter of Dickson v Lascaris, 53 NY2d 204, 209 [1981]).  Similarly, Matter of Bennett v Jeffreys refers to persistent neglect as a variety of extraordinary circumstances (see 40 NY2d at 546).  Persistent neglect requires proof that the parent "failed either to maintain substantial, repeated and continuous contact with a child or to plan for the child's future" (Matter of Ferguson v Skelly, 80 AD3d 903, 905 [3d Dept 2011] [emphasis added], lv denied 16 NY3d 710 [2011]; see Social Services Law § 384-b [7]).  Thus, where a parent has no significant contact with his or her child for 24 months, the avenues of persistent neglect or abandonment presumably would be available under Matter of Bennett v Jeffreys, even without the benefit of Domestic Relations Law § 72 (2).

In view of the foregoing, if we interpret the definition of "extended disruption of custody" under Domestic Relations Law § 72 (2) to mean that the parent must not have had any contact, or at least any significant contact, with the child for at least 24 months, then this statutory ground of

extraordinary circumstances would essentially be eviscerated, or
at best redundant and unnecessary.  This would contravene the
legislative purpose, and would be contrary to the well-
established rule that courts should not interpret a statute in a
manner that would render it meaningless (see Matter of Brown v
Wing, 93 NY2d 517, 523 [1999]; Matter of Industrial Commr. of
State of N.Y. v Five Corners Tavern, 47 NY2d 639, 646-647
[1979]).  Consequently, to give meaning to the separate statutory
avenue of establishing standing, Domestic Relations Law § 72 (2)
must be available for a grandparent even if the parent has had
some contact with the child during the requisite 24-month period.
To hold otherwise would not only conflict with the Legislature's
intent, but would also deter grandparents from promoting a
relationship between the parent and the child while the child
resides with them, contrary to this state's public policy of
encouraging and strengthening parent-child relationships.[5]  While
courts must determine on a case-by-case basis whether the level
of contact between the parent and child precludes a finding of
extraordinary circumstances, it is sufficient to show that the
parent has permitted -- as reflected in the statutory designation

---

[5] Here, the grandparents called the mother nearly every day
to keep her updated on the child's activities.  They also brought
the mother and her daughters on family vacations, invited them to
family holiday gatherings, and relocated them twice.  This
conduct, primarily initiated by the grandparents, kept the mother
in closer contact with the child.  It would be incongruous to
then deny the grandparents standing based on their efforts at
facilitating that contact.

of the particular extraordinary circumstance at issue -- an "extended disruption of custody" (Domestic Relations Law § 72 [2] [a] [emphasis added]).

For essentially the same reasons, a parent need not relinquish all care and control of the child.  Even if the parent exercises some control over the child -- for example during visitation -- a parent may still, as a general matter, have voluntarily relinquished care and control of the child to the grandparent to the extent that the grandparent is, in essence, acting as a parent with primary physical custody.  The key is whether the parent makes important decisions affecting the child's life, as opposed to merely providing routine care on visits.

Here, the mother argues that the grandparents were only acting with her permission when making decisions regarding the child.  She concedes that she signed three documents, each giving the grandparents permission to make such decisions, including medical and educational decisions, without any time limitation, but contends that the documents prove that she retained ultimate control over all decisions.  Family Court concluded that the documents, and the mother's conduct, showed that she relinquished her authority and responsibility to make the decisions.  The Appellate Division, on the other hand, concluded that the grandparents relied on the mother's permission (128 AD3d at 25). In our view, Family Court's interpretation of the documents, and

their implications here, is more accurate.  The grandparents

obtained the documents because there was no custody order giving

the grandparents the legal right to make such decisions, although

the child was in their physical custody a majority of the time,

and they needed to be prepared for all types of situations.

Nevertheless, the mother freely signed over virtually all

decision-making rights indefinitely -- she did not limit the

permission to times when she was unavailable -- demonstrating her

intent that the grandparents "permanently assume the parental

responsibility" of caring for the child (Matter of Michael G.B.,

219 AD2d at 294).

As for the parties' conduct, the grandparents spoke

with the mother almost daily about the child.  The mother claims

that they did so to seek her permission before making decisions

about the child.  However, the evidence is more consistent with

Family Court's conclusion that the grandparents made all

decisions about the child and merely kept the mother informed of

the decisions that they had made or were about to make.  For

example, the mother and her boyfriend testified that, at least as

early as 2011, she wanted to enroll the child in a school in the

district where she lived, rather than the district of the

grandparents' residence.  The grandparents desired to keep the

child in their district, where he had always attended school.

The mother did not make any change in the child's school

enrollment until the summer of 2012, after this proceeding had

commenced.  In addition, the mother could have expressly revoked her written permission, or specifically limited the authorization to making medical decisions in emergency situations, but she never did so.  Instead, her conduct, and that of the grandparents, supports Family Court's finding that "in reality [the mother] relinquished her parental control and decisionmaking authority in writing and in practice to the [g]randparents."

Furthermore, while there arguably may have been a reason for the mother to refrain from seeking physical custody during the time that she was caring for her own ailing parents, that situation did not arise until 2006, several years after the child began living with the grandparents.  Additionally, although one of the mother's parents died and the other went into a nursing home in 2009, the mother allowed the grandparents to continue raising the child thereafter and she did not seek physical custody of him until 2012.  No reasonable explanation was provided for her failure to attempt to gain physical custody after 2009 (see Matter of Michaellica Lee W., 106 AD3d 639, 639-640 [1st Dept 2013]).[6]

---

[6] For purposes of determining extraordinary circumstances, this situation can be distinguished from those in which a parent has a compelling reason to allow a nonparent to assume custody for a more limited and defined period of time.  For example, no extraordinary circumstances were found where a father asked a grandfather to assume custody while the father "got [his] life together," after which the father completed substance abuse treatment, anger management, and parenting classes and obtained steady employment -- all while continuously attempting to maintain contact with the children -- before he tried to regain

In sum, the evidence more closely comports with Family Court's finding that the mother voluntarily relinquished care and control of the child for more than 24 months, even though she had regular contact and visitation with him (see Matter of Curless, 125 AD3d at 1196; Matter of Battisti v Battisti, 121 AD3d 1196, 1197-1198 [3d Dept 2014]; see also Matter of Marcus CC., 107 AD3d at 1244). The mother allowed the grandparents to assume control over, and responsibility for the care of, the child while he resided with them for a prolonged period of years, during which she assumed the role of a noncustodial parent in virtually every way (see Matter of Traci M.S. v Darlene C., 37 AD3d 1083, 1084 [4th Dept 2007]). Where, as here, the mother has effectively transferred custody of the child to the grandparents for a prolonged period of time, the circumstances rise to the level of extraordinary, as required under our law to confer standing upon the grandparents to petition the courts to formally obtain legal custody.

We reiterate that the conferral of standing, through the demonstration of extraordinary circumstances, is only the

---

custody (see Matter of Ferguson v Skelly, 80 AD3d 903, 905 [3d Dept 2011], lv denied 16 NY3d 710 [2011]). Similarly, it may be necessary for a single parent who is enlisted in the military to cede custody while deployed. In such situations, a parent can enter into an agreement memorializing a period of temporary custody, or can include limiting language in written authorizations -- unlike the authorizations here, which explicitly stated that they were "open and ongoing" and had "no expiration date."

first step of the inquiry where a nonparent seeks custody against a parent.  The second step addresses the best interest of the child.  Here, Family Court found that it was in the child's best interest to remain in the primary physical custody of the grandparents.  However, inasmuch as the Appellate Division did not reach that question, it must do so on remittal.

In conclusion, the grandparents established their standing to seek custody of the child by demonstrating extraordinary circumstances, namely an extended disruption of the mother's custody, in accordance with Matter of Bennett v Jeffreys and Domestic Relations Law § 72 (2).  Accordingly, the Appellate Division order should be reversed, without costs, and the matter remitted to that court for further proceedings in accordance with this opinion.

* * * * * * * * * * * * * * * * *

Order reversed, without costs, and matter remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the opinion herein.  Opinion by Judge Stein. Chief Judge Lippman and Judges Pigott, Rivera, Abdus-Salaam and Fahey concur.

Decided December 16, 2015