Clark, J.
Appeal from an order of the Family Court of Tompkins County (Cassidy, J.), entered March 1, 2016, which, among other things, granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, for custody of respondents’ child.
Respondent Amy TT. (hereinafter the mother) and respondent Richard TT.[1] are the parents of a daughter (born in 2004). In August 2014, the mother moved to Florida, while the child remained in New York with petitioner, the child’s maternal grandmother. In July 2015, petitioner commenced the first of these proceedings, seeking custody of the child on the basis that she had been the child’s primary caregiver “for more than the past five years” and that the child did not wish to move to Florida with the mother. Petitioner also made allegations of maltreatment against the mother, prompting Family Court to direct an investigation pursuant to Family Ct Act § 1034. The mother filed a cross petition for custody and the matter thereafter proceeded to a fact-finding hearing and a Lincoln hearing. Family Court denied the mother’s motions to dismiss petitioner’s petition for lack of standing and, having determined that petitioner had demonstrated the requisite extraordinary circumstances, found that it was in the child’s best interests to award petitioner sole legal and primary physical custody, with the mother having certain periods of parenting time. The mother appeals, solely contesting Family Court’s finding of extraordinary circumstances.
A parent has a claim of custody to his or her child that is superior to all other persons, unless a nonparent establishes that there has been surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or “other like extraordinary circumstances” (Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976]; see Matter of Elizabeth SS. v Gracealee SS., 135 AD3d 995, 996 [2016]). A nonparent bears the heavy burden of establishing that there are extraordinary circumstances and, thus, that he or she has standing to seek custody of another person’s child (see Matter of Brown v Comer, 136 AD3d 1173, 1174 [2016]; Matter of Lina Y. v Audra Z., 132 AD3d 1086, 1087 [2015]; Matter of Roth v Messina, 116 AD3d 1257, 1258 [2014]). Once extraordinary circumstances have been established, Family Court may then proceed to the issue *1213 of whether an award of custody to the nonparent, rather than the parent, is in the child’s best interests (see Matter of Bennett v Jeffreys, 40 NY2d at 548; Matter of Crisell v Fletcher, 141 AD3d 879, 881 [2016]; Matter of Rumpff v Schorpp, 133 AD3d 1109, 1110 [2015]).
A grandparent, in particular, may make the requisite showing of extraordinary circumstances sufficient to confer upon him or her standing to seek custody by establishing that there has been an “extended disruption of custody” (Domestic Relations Law § 72 [2] [a]; see Matter of Suarez v Williams, 26 NY3d 440, 448 [2015]). Under the statute, an “extended disruption of custody” includes, but is not limited to, “a prolonged separation of the respondent parent and the child for at least [24] continuous months during which the parent voluntarily relinquished care and control of the child and the child resided in the household of the petitioner grandparent . . . , provided, however, that the court may find that extraordinary circumstances exist should the prolonged separation have lasted for less than [24] months” (Domestic Relations Law § 72 [2] [b]; see Matter of Suarez v Williams, 26 NY3d at 448; Matter of Juan J.R. v Krystal R., 143 AD3d 568, 569 [2016]). In assessing whether the parent voluntarily relinquished care and control of the child and whether the child actually resided with the grandparent for the required prolonged period of time, courts must consider the totality of the circumstances, taking into account such factors as “the quality and quantity of contact between the parent and child,” the amount of time that the child has lived with the grandparent, the quality of the relationship between the child and the grandparent and the length of time that the parent allowed the separation to continue before attempting to assume the primary parental role (Matter of Suarez v Williams, 26 NY3d at 449; see Matter of Curless v McLarney, 125 AD3d 1193, 1195 [2015]; Matter of Bevins v Witherbee, 20 AD3d 718, 719 [2005]). The “key” inquiry in determining whether there has been a voluntary relinquishment of care and control is “whether the parent makes important decisions affecting the child’s life, as opposed to merely providing routine care on visits” (Matter of Suarez v Williams, 26 NY3d at 451).
Here, petitioner’s proof appeared to be primarily directed at establishing an extended disruption of custody pursuant to Domestic Relations Law § 72 (2).[2] To that end, petitioner testified that the child resided with her for roughly two years prior to *1214 the mother’s move to Florida in August 2014 and that the child continued to live with her thereafter through the commencement of these proceedings. However, the record evidence, including petitioner’s own testimony, belied petitioner’s claims that there was any prolonged separation between the mother and the child prior to the mother’s move or that the child continuously resided with her during that time frame. The testimony of both petitioner and the mother revealed that, at varying times from 2012 through August 2014, the mother worked either the second shift or third shift and that she had asked petitioner to assist her with child care while she worked those late shifts. Petitioner readily acknowledged that, while the child would generally sleep at her house during the work week, the child would, more often than not, sleep at the mother’s house on the mother’s nonworking weekends. In addition, the mother testified that she would often put the child on the bus in the morning, feed the child dinner and tuck the child into bed at petitioner’s house. Furthermore, the mother asserted that, prior to her move, she brought the child to doctor’s appointments, attended the child’s concerts and parent-teacher conferences and obtained health insurance for the child.
While petitioner demonstrated that the child continuously resided with her for an 11-month period following the mother’s move to Florida, she failed to proffer sufficient evidence to establish that this was a prolonged separation of the mother and the child during which the mother voluntarily relinquished care and control of the child to her. Indeed, petitioner’s testimony demonstrated that the mother maintained consistent contact with the child throughout her 11-month residence in Florida. In particular, petitioner stated that the mother regularly called the child, visited the child over Christmas and paid for petitioner and the child to fly to Florida over the child’s April vacation.
With respect to voluntary relinquishment, petitioner merely stated that she and the mother had discussed the mother’s move to Florida, but had never discussed whether the mother intended the child to move with her. In stark contrast, the mother testified that, prior to moving, she and petitioner had a discussion about the child remaining in New York only until such time as she had secured employment and prepared suitable living arrangements for herself and the child in Florida. Further, the mother testified that, after she was established in *1215 Florida, she only allowed the child to remain in New York because the child had asked to stay through the end of the school year. Despite that Family Court did not make any express credibility determinations resolving the conflicting testimony of petitioner and the mother, this Court’s fact-finding authority is as broad as that of Family Court (see generally Matter of Austin v Smith, 144 AD3d 1467, 1469 [2016]; Matter of Renee TT. v Britney UU., 133 AD3d 1101, 1104 [2015]). In an exercise of that broad fact-finding authority, we find the mother’s account, which demonstrates that she did not intend to cede care and control of the child to petitioner, to be the more credible one.
Moreover, petitioner offered little to no evidence as to her role, if any, in making important decisions affecting the child’s life. Petitioner offered no testimony as to any instances in which she made significant decisions relating to the child, so as to establish that she provided anything more than child care for the mother while she set up residence in Florida. In fact, the only testimony given by petitioner with respect to who made important decisions relating to the child while the mother was in Florida demonstrated that it was the mother who had final decision-making authority. Specifically, petitioner testified that the mother approved the child’s participation in certain activities that had resulted in the child’s absence from school when the mother was in Florida, thereby demonstrating that, even after the mother moved, she continued to make decisions affecting the child.
In sum, although petitioner demonstrated that the child lived with her for a continuous 11-month period, the totality of the record evidence fell short of establishing that there was a prolonged separation between the mother and child during which the mother voluntarily relinquished care and control of the child to petitioner, particularly given the evidence that petitioner agreed to provide child care (see Matter of Juan J.R. v Krystal R., 143 AD3d at 569; see generally Matter of Suarez v Williams, 26 NY3d at 449-451). As such, Family Court’s finding of extraordinary circumstances is not supported by a sound and substantial basis in the record. Consequently, we dismiss petitioner’s custody petition for lack of standing, grant the mother’s cross petition and remit the matter to Family Court so that it may facilitate a smooth transition of custody and address the issue of petitioner’s visitation (see Domestic Relations Law § 72 [1]).
McCarthy, J.P., Egan Jr., Lynch and Devine, JJ., concur.
Ordered that the order is reversed, on the law, without costs, *1216 petition dismissed, cross petition granted, and matter remitted to the Family Court of Tompkins County for further proceedings not inconsistent with this Court’s decision, said proceedings to be held within 20 days of the date of this decision.

. Although named as a respondent in both petitioner’s and the mother’s respective petitions, the child’s father did not file an answer or otherwise appear or participate in these proceedings.

. To the extent that petitioner also sought to establish extraordinary circumstances by demonstrating that the mother was unfit, such efforts were unsuccessful. Indeed, the report that resulted from the Family Ct Act § 1034 *1214 investigation revealed no child protective concerns, and the record evidence did not substantiate petitioner’s allegations of maltreatment.