Matter of Karen Q. (Christina R.--David Q.) (2019 NY Slip Op 02394)





Matter of Karen Q. (Christina R.--David Q.)


2019 NY Slip Op 02394


Decided on March 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 28, 2019

525641

[*1]In the Matter of KAREN Q., Respondent, CHRISTINA R., Appellant, and DAVID Q., Respondent. (Proceeding No. 1.)
In the Matter of CHRISTINA R., Appellant,
and
KAREN Q., Respondent, and DAVID Q., Respondent. (Proceeding No. 2.)

Calendar Date: February 11, 2019

Before: Garry, P.J., Lynch, Clark, Devine and Pritzker, JJ.


Rufus E. Burgess, Jacksonville, for appellant.
John A. Cirando, Syracuse, for David Q., respondent.
Kathleen A. Sullivan, Ithaca, attorney for the child.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from an order of the Family Court of Tompkins County (Cassidy, J.), entered August 28, 2017, which, among other things, dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Christina R. (hereinafter the mother) and respondent David Q. (hereinafter the father) are the parents of a child (born in 2008). Karen Q. (hereinafter the grandmother) is the paternal grandmother. In June 2012, the parties consented to an order that granted joint legal custody and physical placement of the child to the father and the grandmother, with a schedule of parenting [*2]time for the mother. The order provided that any party could petition for future modification without the need to show a change in circumstances (see generally Matter of Christy T. v Diana T., 156 AD3d 1159, 1160 [2017]). In July 2013, the mother commenced a visitation proceeding and, after a fact-finding hearing, obtained an increase in her parenting time.
In October 2016, the grandmother commenced the first of these proceedings, seeking to suspend the mother's parenting time or to require supervision. The mother then commenced a proceeding seeking sole custody and primary physical placement of the child. Family Court issued an interim order that, among other things, eliminated the mother's overnight parenting time. After holding fact-finding and Lincoln hearings, Family Court found the existence of extraordinary circumstances, denied the mother's petition for custody, continued joint custody and physical placement with the father and the grandmother, and directed that the terms of the interim visitation order become permanent, with certain transportation adjustments. The mother appeals. The father and the attorney for the child support affirmance.[FN1]
"[A] parent has a claim of custody of his or her child that is superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness, disruption of custody over a prolonged period of time or the existence of other extraordinary circumstances" (Matter of Sweeney v Sweeney, 127 AD3d 1259, 1260 [2015]; accord Matter of Peters v Dugan, 141 AD3d 751, 752 [2016]). "A nonparent bears the heavy burden of establishing that there are extraordinary circumstances and, thus, that he or she has standing to seek custody of another person's child" (Matter of Donna SS. v Amy TT., 149 AD3d 1211, 1212 [2017]; see Matter of Lina Y. v Audra Z., 132 AD3d 1086, 1087 [2015]). Here, Family Court found that the grandmother had met this burden by proving that there had been an "extended disruption of custody." The governing statute defines this provision to include "a prolonged separation of the respondent parent and the child for at least [24] continuous months during which the parent voluntarily relinquished care and control of the child and the child resided in the household of the petitioner grandparent" (Domestic Relations Law § 72 [2]).
It is undisputed that the statutory criteria are partially satisfied here, as the child resided continuously in the grandmother's household for more than four years. The parties' dispute centers on the remaining criterion — that is, whether the mother "voluntarily relinquished care and control of the child" (Domestic Relations Law § 72 [2]; see Matter of Suarez v Williams, 26 NY3d 440, 448 [2015]). Voluntary relinquishment does not require the complete severance of all ties between a parent and a child, and may be found where, as here, a parent continues to maintain contact with a child. The determination is based upon the totality of the circumstances and consideration of "the extent that the grandparent is, in essence, acting as a parent with primary physical custody. The key is whether the parent makes important decisions affecting the child's life, as opposed to merely providing routine care on visits" (Matter of Suarez v Williams, 26 NY3d at 451).
The record reveals that the grandmother and the father, who also resides in the grandmother's home, have been the child's primary caretakers since 2012 and jointly make decisions about the child's education, health and other significant matters, with little or no participation by the mother. The grandmother and the father transport the child back and forth from school, help the child with homework, communicate with her teachers and attend conferences and other school events. By contrast, the mother does not attend school events or extracurricular activities, such as the child's dance and piano recitals. The child's teacher testified that she has never met the mother, and the mother acknowledged that she did not know the names of the child's teachers. Although the mother claimed that the grandmother had prevented her from receiving information about school events by changing the mother's address in school records, Family Court rejected this claim. The court instead credited the testimony of a school official that the mother's information had always been listed in school records, that the grandmother had never changed it, and that announcements of school events were also publicly [*3]available on the school's website. The mother acknowledged that she had independent access to school records under the June 2012 order, and that she had access to the Internet to view the school website (see Matter of Heather U. v Janice V., 160 AD3d 1149, 1150 [2018]).
The testimony further established that the father and the grandmother jointly manage the child's health care and that the grandmother provides the child's health insurance. The grandmother and the father decided to place the child in mental health counseling beginning in May 2015 because the child appeared to be upset, confused and frightened when she returned from visits with the mother. The mother testified that she did not know that the child was in counseling and that the grandmother did not keep her informed about the child's medical care. However, the mother acknowledged that she had full access to the child's medical information and that she had been able to obtain information from the child's doctor when, on a single occasion, she sought to do so.
The mother asserts that she allowed the grandmother and the father to assume custody in 2012 only because she was then experiencing a high risk pregnancy, and that she believed that the placement would be temporary. However, nothing in the text of the June 2012 order indicates that the parties intended it to be temporary, nor does the mother allege that she ever attempted to regain custody of the child before commencing the instant proceeding (compare Matter of Elizabeth SS. v Gracealee SS., 135 AD3d 995, 996-997 [2016]). Her claim upon appeal that her 2013 petition to increase her parenting time should be treated as a custody proceeding for this purpose is without merit, as the resulting visitation order does not indicate that the mother sought anything other than an increase in her parenting time, and the mother did not testify that she believed that she was seeking custody at that time or that she wished to do so. According deference to Family Court's credibility assessments and factual findings (see Matter of Catherine A. v Susan A., 155 AD3d 1360, 1361 [2017]), we find that the determination that the grandmother established the existence of an extended disruption of custody constituting extraordinary circumstances is supported by a sound and substantial basis in the record (see Matter of Suarez v Williams, 26 NY3d at 451-453; Matter of Aida B. v Alfredo C., 114 AD3d 1046, 1049 [2014]; Matter of Magana v Santos, 70 AD3d 1208, 1209 [2010]; compare Matter of Donna SS. v Amy TT., 149 AD3d at 518-519).
Family Court therefore properly turned to the question of whether the award of custody to the grandmother was in the child's best interests (see Matter of Marcia ZZ. v April A., 151 AD3d 1303, 1304 [2017]). "No continuing preference for the parent over the nonparent is part of the analysis; instead, factors to be taken into account include the parties' respective abilities to provide stable homes for the child[], their relationships with the child[] and ability to guide and provide for [her], the child[]'s wishes and the parties' willingness to foster a positive relationship between the child[] and the other party" (Matter of Rumpff v Schorpp, 133 AD3d 1109, 1111 [2015] [internal quotation marks, brackets, and citations omitted]; accord Matter of Debra SS. v Brian TT., 163 AD3d 1199, 1202-1203 [2018]).
The grandmother, who was employed as a college professor, had provided a stable home for the child for more than four years. The mother, who suffered from multiple sclerosis, was unable to work, received home care assistance from a paid caretaker who was also her romantic partner, and had moved several times during the child's residence with the grandmother. The child was doing well at school, attending regularly and completing all of her homework assignments. Although the mother testified that the child seemed to enjoy spending time with the mother and the mother's younger son, the father and the grandmother testified that the child did not wish to attend visits and that she often appeared hungry, tired and poorly cared for when she returned. The grandmother testified that the child had become particularly apprehensive about spending time with the mother after the mother's other daughter — the child's half sister — stopped attending visits on the same schedule, and that the child had sometimes been distressed by inappropriate and disturbing remarks that the mother made during visits. The grandmother reported that the child became "a little bit more settled" after overnight visits with the mother were discontinued. The grandmother also testified that the mother's brother, a registered sex offender, had been present several times when the child was visiting the mother.
As for willingness to support the child's relationship with the other party, the grandmother testified that she provided almost all of the child's transportation to and from visits with the mother, despite provisions in the June 2012 order requiring the mother to share this responsibility [FN2]. The grandmother also facilitated visits between the child and the child's half sister without the mother's involvement. We thus find that the record fully supports Family Court's best interests analysis and custody and visitation determinations (see Matter of Sweeney v Daub-Stearns, 166 AD3d 1340, 1342 [2018]; Matter of Debra SS. v Brian TT., 163 AD3d at 1202-1203; Matter of Peters v Dugan, 141 AD3d 751, 753-754 [2016]).
Lynch, Clark, Devine and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The grandmother did not file a brief or otherwise participate in the appeal.

Footnote 2: The mother stated that she had difficulty driving because of visual problems related to her multiple sclerosis.