Matter of Tuttle v Worthington (2023 NY Slip Op 04282)

Matter of Tuttle v Worthington

2023 NY Slip Op 04282

Decided on August 11, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 11, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., LINDLEY, CURRAN, BANNISTER, AND OGDEN, JJ.

536 CAF 22-01012

[*1]IN THE MATTER OF KATRINA TUTTLE, PETITIONER-RESPONDENT,
v
KRISTINE WORTHINGTON, DONALD WORTHINGTON, ANDREW WORTHINGTON, RESPONDENTS-APPELLANTS, AND ALLEGANY COUNTY DEPARTMENT OF SOCIAL SERVICES, RESPONDENT-RESPONDENT. MICHAEL J. CAPUTO, ESQ., ATTORNEY FOR THE CHILD, APPELLANT. (APPEAL NO. 2.)

KAMAN BERLOVE LLP, ROCHESTER (GARY MULDOON OF COUNSEL), FOR RESPONDENTS-APPELLANTS KRISTINE WORTHINGTON AND DONALD WORTHINGTON. 
THOMAS L. PELYCH, HORNELL, FOR RESPONDENT-APPELLANT ANDREW WORTHINGTON.
MICHAEL J. CAPUTO, ROCHESTER, ATTORNEY FOR THE CHILD, APPELLANT PRO SE.
ERICKSON WEBB SCOLTON & HAJDU, LAKEWOOD (LYLE T. HAJDU OF COUNSEL), FOR PETITIONER-RESPONDENT. 

 Appeals from an amended order of the Family Court, Allegany County (Terrence M. Parker, J.), entered May 16, 2022, in a proceeding pursuant to Family Court Act article 6. The amended order, among other things, awarded petitioner custody of the subject child. 
It is hereby ORDERED that the amended order so appealed from is reversed on the law without costs and the matter is remitted to Family Court, Allegany County, for further proceedings in accordance with the following memorandum: Petitioner mother commenced this proceeding pursuant to Family Court Act article 6 seeking modification of a prior order, entered more than three years earlier, that awarded joint custody of the subject child to her, respondent Andrew Worthington, i.e., the child's father, and respondents Kristine Worthington and Donald Worthington, i.e., the child's paternal grandparents, with "primary placement" of the child with the grandparents and "secondary placement" with the mother and with the father. In her amended petition for a change in custody, the mother seeks a continuation of the joint custody arrangement but modification of the child's placement with primary placement of the child awarded to the mother.
Following a hearing, Family Court determined that the mother established a change in circumstances since entry of the prior order and that the grandparents failed to meet their burden of establishing extraordinary circumstances, without which they lacked standing to seek custody. The court therefore awarded custody to the mother without addressing the best interests of the child. In appeal No. 1, the grandparents, the father, and the attorney for the child (AFC) appeal from an order awarding custody of the child to the mother with "secondary placement" to the father and grandmother. In appeal No. 2, the same parties appeal from an amended order issued [*2]a week later that made the same award of custody to the mother with secondary placement to the father and grandmother. Inasmuch as the amended order superseded the original order, appeal No. 1 should be dismissed (see Matter of Eric D. [appeal No. 1], 162 AD2d 1051, 1051 [4th Dept 1990]).
With respect to appeal No. 2, we conclude that, although the court properly determined that the mother established a change in circumstances since entry of the prior order (see generally Matter of Johnson v Johnson [appeal No. 2], 209 AD3d 1314, 1315 [4th Dept 2022]), the court erred in determining that the grandparents failed to establish extraordinary circumstances and thus lacked standing to contest the mother's custody petition.
It is well settled that "[t]he State may not deprive a parent of the custody of a child absent surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances" (Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976] [emphasis added]; see Domestic Relations Law § 72 [2] [a]). "If extraordinary circumstances are established such that the nonparent has standing to seek custody, the court must make an award of custody based on the best interest of the child" (Matter of Suarez v Williams, 26 NY3d 440, 446 [2015]).
Consistent with Bennett, the legislature amended Domestic Relations Law § 72 (2) (a) to provide that "[a]n extended disruption of custody, as such term is defined in this section, shall constitute an extraordinary circumstance" for grandparents who seek custody of grandchildren for whom they have provided care (see L 2003, ch 657,
§ 2). The statute defines " 'extended disruption of custody' " to "include, but not be limited to, a prolonged separation of the respondent parent and the child for at least [24] continuous months during which the parent voluntarily relinquished care and control of the child and the child resided in the household of the petitioner grandparent or grandparents, provided, however, that the court may find that extraordinary circumstances exist should the prolonged separation have lasted for less than [24] months" (Domestic Relations Law § 72 [2] [b]).
As the Court of Appeals has made clear, however, an extended disruption of custody as defined in Domestic Relations Law § 72 (2) (a) is merely "a specific example of extraordinary circumstances" (Suarez, 26 NY3d at 446) and the statute was "not intended to overrule existing case law relating to third parties obtaining standing in custody cases" (id. at 447). That is to say, the grounds for nonparent standing set forth in Bennett apply to grandparents who cannot establish extraordinary circumstances arising from an extended disruption of custody.
"The extraordinary circumstances analysis must consider the cumulative effect of all issues present in a given case . . . , including, among others, the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the . . . parent allowed such custody to continue without trying to assume the primary parental role" (Matter of Brown v Comer, 136 AD3d 1173, 1174 [3d Dept 2016] [internal quotation marks omitted]; see Matter of Byler v Byler, 207 AD3d 1072, 1074 [4th Dept 2022], lv denied 39 NY3d 901 [2022]).
Here, the court determined that there was "no extended disruption of custody" because the mother had joint legal custody of the child since entry of the prior order and maintained consistent contact with him as well as secondary placement. The court further determined that there was no "abandonment or prolonged separation," and, thus, no extraordinary circumstances. As noted, however, those are not the only grounds upon which nonparents may establish standing to seek custody. In our view, the grandparents established the existence of "other like extraordinary circumstances" so as to afford them standing (Bennett, 40 NY2d at 544).
It is undisputed that the child, who was eight years old at the time of the hearing, had lived with the grandparents for his entire life in the only home he has ever known; the child expressed a strong desire to continue residing with his grandparents and the AFC adheres to that position on appeal; the mother and the father both suffered from severe substance abuse problems for years and were unable to care for the child on their own; the mother failed to contact the child for a period of 18 months before resuming visitation in January 2018; the child's half-sister also resided with the grandparents and the child developed a sibling relationship with her; and "the grand[parents] ha[ve] taken care of the child for most of his life and provided him with stability" (Matter of DellaPiana v DellaPiana, 161 AD3d 1228, 1231 [3d Dept 2018]). Additionally, according to the AFC, the child had "developed a strong emotional [*3]bond with the grand[parents]" (Matter of Lewis v Speaker, 143 AD3d 822, 824 [2d Dept 2016]; see Matter of Sharlow v Hughes, 213 AD3d 1200, 1201 [4th Dept 2023]; Matter of Hilkert v Parsons-O'Dell, 187 AD3d 1675, 1676 [4th Dept 2020], lv denied 36 NY3d 905 [2021]).
Under the circumstances, we conclude that, "even if the prolonged separation alone is entitled to little significance here, the combination of that factor along with others present on this record sufficiently establish the existence of extraordinary circumstances" (Byler, 207 AD3d at 1074), and that the court's contrary determination is not supported by a sound and substantial basis in the record.
We therefore reverse the amended order, and we remit the matter to Family Court for a new hearing to determine whether the modifications of the prior order sought by the mother are in the best interests of the child, at which new facts may be considered in light of events that have transpired during the pendency of this appeal (see Matter of Michael B., 80 NY2d 299, 318 [1992]; Matter of Matthew DD. v Amanda EE., 187 AD3d 1382, 1384 [3d Dept 2020]; Matter of Lopez v Reyes, 154 AD3d 756, 757 [2d Dept 2017]).
All concur except Curran and Ogden, JJ., who dissent in appeal
No. 2 and vote to affirm in the following memorandum: We disagree with the majority that extraordinary circumstances exist on this record, and we therefore respectfully dissent in appeal No. 2. Despite the limitations on our review, the majority is weighing the evidence and arriving at a different result from the trial court. We, however, are unwilling to disturb Family Court's determination and would affirm the amended order in appeal No. 2.
As an initial matter, contrary to the contention of respondents Kristine Worthington (grandmother) and Donald Worthington (collectively, grandparents) and respondent Andrew Worthington (father), we agree with the majority that petitioner mother established a change in circumstances since the entry of the prior order.
We disagree with the majority, however, that the court erred in determining that the grandparents failed to establish extraordinary circumstances. " '[A]s between a parent and a nonparent, the parent has a superior right to custody that cannot be denied unless the nonparent establishes that the parent has relinquished that right because of surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances . . . The nonparent has the burden of proving that extraordinary circumstances exist, and until such circumstances are shown, the court does not reach the issue of the best interests of the child' " (Matter of Orlowski v Zwack, 147 AD3d 1445, 1446 [4th Dept 2017]; see Matter of Bennett v Jeffreys, 40 NY2d 543, 545-546 [1976]; Matter of Byler v Byler, 185 AD3d 1403, 1404 [4th Dept 2020]). In evaluating whether there are extraordinary circumstances, we "[a]fford[ ] great deference to the determination of the hearing court with its superior ability to evaluate the credibility of the testifying witnesses" (Matter of Miner v Torres, 179 AD3d 1490, 1491 [4th Dept 2020]; see Matter of Cross v Caswell, 113 AD3d 1107, 1107 [4th Dept 2014]), and we should not disturb that determination "unless it lacks a sound and substantial basis in the record or is contrary to the weight of the credible evidence" (Matter of Pieri v Rider, 195 AD2d 1013, 1013 [4th Dept 1993]; see Matter of Papineau v Sanford, 189 AD3d 2147, 2147 [4th Dept 2020], lv denied 36 NY3d 911 [2021]; Matter of Radley v Radley, 107 AD3d 1578, 1579 [4th Dept 2013], lv denied 22 NY3d 852 [2013]).
The mother's separation from the child was the result of substance abuse issues, but the mother testified at the hearing that her final use of illegal substances was over five years before the hearing began. Furthermore, we believe that the record supports the conclusion that there have been no prolonged periods of separation between the mother and child inasmuch as the mother has been actively exercising the visitation set forth in the prior order, with the exception of the period of her final relapse into drug use which occurred more than two years prior to her filing of the instant petition (see Matter of Jody H. v Lynn M., 43 AD3d 1318, 1318-1319 [4th Dept 2007]). It is evident that " 'the separation between the [mother] and child is not in any way attributable to a lack of interest or concern for the parental role,' " and therefore " 'deserves little significance' " (Matter of Byler v Byler, 207 AD3d 1072, 1074 [4th Dept 2022], lv denied 39 NY3d 901 [2022] [emphasis added]; see Matter of Male Infant L., 61 NY2d 420, 429 [1984]). Consequently, contrary to the contentions of the grandparents, the father, and the attorney for the child, inasmuch as the grandparents failed to establish the existence of extraordinary [*4]circumstances, there is no need to conduct an analysis of the best interests of the child (see Orlowski, 147 AD3d at 1446).
Finally, we also conclude that there is no need to disturb the court's order with respect to the father's and the grandparents' access to the child. The amended order in appeal No. 2 did not alter the father's access to the child, and, with respect to the grandparents' access, the amended order provides that the grandmother would have access to the child "as the parties may agree," and the record indicates that the mother and the grandparents had previously been able to amicably agree to an access schedule.
Entered: August 11, 2023
Ann Dillon Flynn
Clerk of the Court