Matter of Trina L. v Michelene M. (2024 NY Slip Op 02597)

Matter of Trina L. v Michelene M.

2024 NY Slip Op 02597

Decided on May 09, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 09, 2024

Before: Manzanet-Daniels, J.P., Singh, Kapnick, Gesmer, Rodriguez, JJ. 

Docket No. V-14889/23 V-896/20 V-12857-61/21 Appeal No. 2245 Case No. 2023-03273 

[*1]In the Matter of Trina L., Petitioner-Appellant,
v
Michelene M., Respondent/Petitioner-Respondent, Jamell L., Respondent/Respondent-Respondent, Brandon L., Child-Appellant. 

Steven P. Forbes, Huntington, for appellant.
Andrew J. Baer, New York, for Michelene M., respondent.
Leslie S. Lowenstein, Woodmere, attorney for the child.

Order, Family Court, Bronx County (Robert Hettleman, J.), entered on or about June 16, 2023, which, to the extent appealed from as limited by the briefs, dismissed the paternal grandmother's petition for custody of the subject child, unanimously affirmed, without costs.
This custody petition concerns Brandon L., who was born on July 7, 2008. Petitioner Trina L. is Brandon's paternal grandmother. Respondent Michelene M. is Brandon's mother. Respondent Jamelle L. is Brandon's father and petitioner's son.
After a lengthy trial, Family Court determined petitioner's application for an order of custody of Brandon. The court made the following findings.
Brandon has experienced a good deal of conflict and upheaval in his family life. He and his four siblings all resided together with their mother from their birth until October 2021. In 2019, the parents began filing competing petitions for custody and visitation. Around the same time, the father moved to Pennsylvania. In 2020, the mother filed a petition seeking custody of Brandon. In October 2021, the father failed to return Brandon to the mother after visitation. Brandon resided with his father for approximately the next 17 months. In August 2022, Family Court entered neglect findings against the father as to Brandon's siblings. Pursuant to the dispositional order in the neglect cases, Brandon's siblings were released to the mother's care, and a full order of protection for those children was issued against the father, which permitted visitation as ordered by the court. Brandon, who resided with his father at the time, was not a subject of the neglect proceedings.
In March 2023, Brandon was suspended from school and the father threatened to harm him. At the grandmother's urging and expense, Brandon took a bus to New York and went to the grandmother's home. Three days later, the grandmother commenced this proceeding seeking custody of him.
Family Court's determination that the grandmother failed to establish extraordinary circumstances conferring standing to seek custody of the child was supported by a sound and substantial basis in the record and will not be disturbed (see Domestic Relations Law § 72[2][a]; Matter of Suarez v Williams, 26 NY3d 440, 446 [2015]; Matter of Bailey v Carr, 125 AD3d 853, 853 [2d Dept 2015]). The Domestic Relations Law provides that an "extended disruption of custody" constituting extraordinary circumstances
"shall include, but not be limited to, a prolonged separation of the respondent parent and the child for at least twenty-four continuous months during which the parent voluntarily relinquished care and control of the child and the child resided in the household of the petitioner grandparent . . . provided, however, that the court may find that extraordinary circumstances exist should the prolonged separation have lasted for less than twenty-four months" (Domestic Relations Law § 72[2][b]).
Other circumstances which may constitute extraordinary circumstances include [*2]the parent's "surrender, abandonment, persisting neglect, unfitness, and unfortunate or involuntary disruption of custody over an extended period of time" (Matter of Suarez v Williams, 26 NY3d 440, 446 [2015]). In determining whether extraordinary circumstances exist, courts consider factors including the quality of the child's relationship with the grandparent and the length of time the parent allowed a child to remain in the custody of the grandparent without trying to assume the primary parental role (id. at 449).
Here, Family Court found several facts that collectively showed the lack of extraordinary circumstances. These findings, based on the Family Court's credibility determinations, are supported by the record and thus entitled to deference (see Matter of Bruen v Merla-Profenna, 181 AD3d 592, 593 [2d Dept 2020]; Matter of Juan J.R. v Krystal R., 143 AD3d 568, 569 [1st Dept 2016]). First, the child had left the mother's care for 17 months to live with the father against the mother's wishes and during the pendency of her petition seeking custody of him. Accordingly, the mother never "voluntarily relinquished care and control of the child" (Domestic Relations Law § 72[2][b]; see Matter of Jose C. v Janet V, 171 AD3d 651, 652 [1st Dept 2019]; Matter of Elizabeth SS. v Gracealee SS., 135 AD3d 995, 997 [3d Dept 2016]). Second, it was undisputed that the child had only resided with the grandmother for three days before the grandmother's custody petition was filed and had only been living with her for three months at the conclusion of the custody trial. Third, Family Court found that the grandmother: (1) encouraged and assisted Brandon to run away from the mother's home to join his father in Pennsylvania; (2) encouraged Brandon to run away from his father's home and live with the grandmother, despite her awareness that the mother was continuing to seek physical custody of Brandon; and (3) consistently and repeatedly denigrated the mother to Brandon and encouraged him not to accept or respect her parenting.
Finally, the grandmother does not claim that the mother is unfit. Rather, based on Brandon's having run away and lack of communication with the mother, she claims that the mother's home "was in a chronic state of dysfunction and disarray." However, as the Family Court found, Brandon's actions were, at least in part, due to the grandmother's behavior. Furthermore, Family Court's award of custody to the mother is based on its finding that she is a fit parent who has demonstrated "compassion and understanding" toward her son. As Family Court noted, the mother "has always sought to have all of her children in her care . . . and she has never consented to [the father] and [the paternal grandmother] obtaining custody . . . . However, [the mother] has acknowledged that . . . Brandon did not wish to live with her at times and has wanted to respect [his] position[] and not further traumatize [him] . . . . [The mother] should not be penalized by [the grandmother's[*3]] interference with her parental rights and her relationship with Brandon." We agree.
As the court correctly dismissed the grandmother's petition for custody of the child for lack of standing, we need not engage in a best interests analysis (see Juan J.R., 143 AD3d at 569). Were we to do so, we would agree with Family Court that it was not in the child's best interests for the paternal grandmother to have custody of the child, including for the reasons discussed above.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 9, 2024