Matter of Clifton C. v Tory P. R. (2025 NY Slip Op 02585)

Matter of Clifton C. v Tory P. R.

2025 NY Slip Op 02585

Decided on April 30, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 30, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
BARRY E. WARHIT
LILLIAN WAN
PHILLIP HOM, JJ.

2024-06044
 (Docket No. V-11508-23)

[*1]In the Matter of Clifton C. (Anonymous), petitioner-appellant, 
v
Tory P. R. (Anonymous), respondent-respondent; Jayia R. (Anonymous), nonparty-appellant.

Salvatore C. Adamo, New York, NY, for petitioner-appellant.
Mark A. Peterson, Smithtown, NY, attorney for the child, the nonparty-appellant.
Arza Feldman, Manhasset, NY, for respondent-respondent.

DECISION & ORDER
In a proceeding pursuant to Family Court Act article 6, the maternal grandfather appeals, and the subject child separately appeals, from an order of the Family Court, Suffolk County (Cheryl M. Helfer, Ct. Atty. Ref.), dated June 24, 2024. The order, after a hearing, denied the maternal grandfather's petition for custody of the subject child and dismissed the proceeding.
ORDERED that the order is reversed, on the facts and in the exercise of discretion, without costs or disbursements, and the matter is remitted to the Family Court, Suffolk County, for a hearing to determine a custody award based upon the best interests of the subject child.
The mother and the father have one child together, born in 2009. In 2014 or 2015, the father voluntarily left the child in the care of the mother, who was residing in the maternal grandfather's household. Between 2015 and 2018, the father was incarcerated but maintained some contact with the child. After the father's release, he assisted the mother and the child with moving out of the maternal grandfather's household, but the father continued to live apart from the mother and the child. The maternal grandfather continued assisting the mother in caring for the child and saw the child almost every day. In 2020, the father moved into a house near the maternal grandfather's residence, and the child started staying with the father overnight on a weekly basis.
In June 2023, the mother was involved in a car accident and subsequently died from her injuries. On the night of the accident, a paternal uncle drove the child to the maternal grandfather's house, as the father was visiting his fiancée in North Carolina, where he had been planning to relocate without the child.
In July 2023, after the mother's death, the father decided to bring the child to North Carolina with him. After ascertaining the child's wishes, the maternal grandfather commenced this proceeding for custody of the child. After a hearing, in an order dated June 24, 2024, the Family Court denied the petition and dismissed the proceeding, determining that the maternal grandfather failed to establish the existence of extraordinary circumstances. The maternal grandfather and the [*2]child separately appeal.
"Pursuant to Domestic Relations Law § 72(2)(a), a grandparent has standing to seek custody of a child where the grandparent demonstrates the existence of extraordinary circumstances, such as 'surrender, abandonment, persisting neglect, unfitness, and unfortunate or involuntary disruption of custody over an extended period of time,' 'or other like extraordinary circumstances'" (Matter of Seltzer v Patterson, 193 AD3d 1057, 1058 [citation omitted], quoting Matter of Bennett v Jeffreys, 40 NY2d 543, 544, 546). An "extended disruption of custody" between the child and the parent "shall constitute an extraordinary circumstance" (Domestic Relations Law § 72[2][a]). "The statute defines 'extended disruption of custody' as including, but not limited to, 'a prolonged separation of the respondent parent and the child for at least twenty-four continuous months during which the parent voluntarily relinquished care and control of the child and the child resided in the household of the petitioner grandparent or grandparents'" (Matter of Mooney v Mooney, 198 AD3d 784, 785-786, quoting Domestic Relations Law § 72[2][b]). "However, the statute does not preclude a court from finding the existence of extraordinary circumstances even if the prolonged separation lasted less than 24 months" (id. at 786). "Moreover, lack of contact is not a separate element under th[e] statute, '[r]ather, the quality and quantity of contact between the parent and child are simply factors to be considered in the context of the totality of the circumstances when determining whether the parent voluntarily relinquished care and control of the child, and whether the child actually resided with the grandparents for the required "prolonged" period of time'" (id., quoting Matter of Suarez v Williams, 26 NY3d 440, 449). "'Inasmuch as the Family Court is in the best position to evaluate the credibility, temperament, and sincerity of the parties, its determination should be set aside only if it lacks a sound and substantial basis in the record'" (Matter of Seltzer v Patterson, 193 AD3d at 1058, quoting Matter of Gonzalez v Pagan, 178 AD3d 1039, 1040).
Here, contrary to the Family Court's determination, the maternal grandfather sustained his burden of demonstrating the existence of extraordinary circumstances. The evidence at the hearing established that, even though the father had regular contact and parental access with the child, the maternal grandparents have taken care of the child for most of her life and provided her with stability. Additionally, the father allowed the mother and the maternal grandparents to assume control over, and responsibility for the care of, the child while the father assumed the role of a noncustodial parent, the child has developed a close relationship with her half-siblings and extended family in New York, and the child expressed a desire to continue residing with the maternal grandfather (see Matter of Tuttle v Worthington, 219 AD3d 1142, 1145; Matter of Mumford v Milner, 183 AD3d 893, 895).
Accordingly, since the Family Court did not reach the issue of whether an award of custody to the maternal grandfather was in the best interests of the child, a hearing is required to determine a custody award based upon the best interests of the child (see Matter of Elisa F. v Daniel D., 225 AD3d 695, 697).
BARROS, J.P., WARHIT, WAN and HOM, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court